# Richmond

ATLANTIC LIFE INSURANCE COMPANY v. KENNEDY E. WORLEY.

January 11, 1934.

Present, Campbell, C. J., and Holt, Epes, Hudgins, Gregory and Browning, JJ.

The opinion states the case.

*White, Penn & Stuart, A. D. Christian* and *A. B. Scott,* for the plaintiff in error.

*J. S. Ashworth,* for the defendant in error.

GREGORY, J.,[1] delivered the opinion of the court.

---

[1] By reason of circumstances over which the court had no control, the task of preparing this opinion had to be reassigned. That accounts for the delay in handing down the opinion.

Kennedy E. Worley instituted an action at law against the Atlantic Life Insurance Company, upon a policy of life insurance issued on the life of her husband, Johnathan P. Worley, in which she was the beneficiary. Mr. Worley, the insured, died on June 2, 1929. The case was tried by a jury and resulted in a verdict in favor of the defendant insurance company. Upon a motion to set the verdict aside and enter final judgment for the plaintiff, Mrs. Worley, the court sustained the motion, set aside the verdict and entered judgment in her favor for the net proceeds of the policy. To that judgment this writ of error was awarded.

The policy of $5,000.00 was issued on September 26, 1925, and contained as a part thereof two supplemental agreements, one known as the "total and permanent disability benefit" and the other known as the "double indemnity benefit." The consideration for these two supplemental agreements was computed and embraced in the premium Mr. Worley agreed to pay for the insurance. The first premium was paid and it carried the policy to September 26, 1926. On September 20, 1926, six days before the second premium was due, the insured accidentally fell from the roof of a barn and suffered very serious injuries. The second premium, which became due on September 26, 1926, was paid by the insured, he paying on that date $50.00, a part thereof under an extension agreement and the payment of the balance being extended to January 26, 1927. When the balance became due it was paid. The premiums due on September 26, 1927, and September 26, 1928, were not paid by the insured. The premium due on September 26, 1927, was paid for the insured by the company under the automatic loan provision in the policy, and under another provision in the policy it was kept in force by what is designated as extended term insurance until May 3, 1929, at which time, according to the claim of the insurance company, the policy finally expired.

On November 13, 1926, the insured, under the provisions of the "total and permanent disability benefit," filed with

the company proofs of total and permanent disability as a result of the injury sustained by the fall, and his claim was duly approved by the company on December 20, 1926, three months from the day on which the disability occurred. On the last mentioned date the company began the payment of the monthly disability benefits to the insured and continued to pay them through September 20, 1927, after which date no further payments were made.

The pertinent provisions of the "total and permanent disability benefit," out of which this litigation grows, are as follows:

"Subject to all the other provisions in this agreement, if the insured shall furnish the company with due proofs that he is totally and permanently disabled as hereafter defined, the company, after endorsement hereon, shall:

1. "Waive payment of any premium falling due after the approval of said proofs, and during the continuance of such disability; and

2. "Pay to the insured, immediately upon the approval of said proofs, $10.00 for each $1,000.00 of the face value of this contract and a like amount on the same day in each month thereafter during the lifetime of the insured and the continuance of such disability.

"No deduction will be made from any settlement under this contract on account of premiums waived or income payments made. During the continuance of such disability, surrender values and all other benefits shall be available as if the premiums were paid by the insured, except that the surplus earnings allotted to this contract shall be paid only in cash.

"Disability shall be considered total when the insured becomes so disabled by bodily injury or disease that he is prevented thereby from engaging in any occupation whatsoever for remuneration or profit; and disability shall be considered permanent when the insured (a) will be continuously totally disabled for life, or (b) has been totally disabled continuously for a period of three months immediately preceding the receipt of proofs. The irre-

coverable loss by accident or disease of the sight of both eyes, or the severance of both hands or of both feet, or of one hand and of one foot, shall be considered total and permanent disability."

It is strongly urged by the beneficiary, Mrs. Worley, that under the terms of the contract the insured was entitled to have the 1926 premium waived, notwithstanding the fact that it had been paid by him. It is further contended that inasmuch as the total and permanent disability of the insured within the intent and meaning of the provisions quoted, continued until the death of the insured on June 2, 1929, he was entitled to a waiver of the 1927 premium as well as that of 1926. In support of these contentions she stands upon the written endorsements on the policy made by the company as well as the testimony of witnesses touching the condition of the insured from the date of his accident until his death. There appears upon the policy this endorsement: "Proofs of disability of Johnathan P. Worley, having been approved, premiums hereafter falling due during the continuance of said disability will be waived and the income payments herein provided will be made, subject in all respects to the terms and conditions of this supplemental agreement. Dated at Richmond, Virginia, this 20th day of December, 1926." The endorsement is properly executed by the officers of the company. Another endorsement was made by the company on the "double indemnity benefit," which is in this language: "The premium on this contract having been waived on account of disability, this agreement is hereby cancelled, in accordance with its terms. Dated at Richmond, Virginia, this 20th day of December, 1926." This endorsement is also properly executed by the officers of the company.

It is conceded that if any premium for any year was waived, the policy was in force on June 2, 1929, the date of the death of the insured. Therefore, if the contention of Mrs. Worley be correct—that is, that the 1926 premium was waived—then she is entitled to recover. She would

also be entitled to recover if the disability of the insured continued total and permanent through September 26, 1927, the due day of the premium for that year.

On the other hand, the insurance company contends that the 1926 premium was not waived because it did not fall due "after the approval of said proofs." That the approval of the proofs was made on December 20, 1926, and the 1926 premium fell due on September 20th of that year, which was before and not after the approval of the proofs. The company also contends that the endorsements above set out were made through error and should not have been made. It further contends that the insured was not entitled to have the 1927 premium waived because when it became due, he had been restored and was not at that time totally and permanently disabled. It further contends that the language of the contract of insurance is plain and unambiguous and therefore there is no reason for interpretation or construction.

However plain and unambiguous the pertinent provisions of the policy may be, they were not so plain to the secretary and treasurer of the insurance company. The latter wrote a letter to Mr. Swink, the State manager of the company, under date of October 14, 1927, in which Mr. Swink was told that if the insured was totally disabled when the premium became due the company would waive the premium. This interpretation of the policy by the secretary and treasurer of the company, if adopted, would, of course, result in the waiver of the 1926 premium, because when it became due on September 26, the insured had been totally disabled for six days. However, this interpretation was contradicted in the second paragraph of the same letter.

When the case finally reached the jury the trial court submitted to it one single issue by the instructions. That issue was whether or not the disability of the insured was total, permanent and continuous, as defined in the policy, and whether or not on September 26, 1927, the date of the 1927 premium, he still suffered such total and permanent

disability. The jury were instructed that the premium falling due on September 26, 1926, did not "affect this case in any way." The two instructions, one offered by the plaintiff and the other by the defendant company, were as follows:

"If the jury believe by a preponderance of the evidence that the total and permanent disability of Johnathan P. Worley as defined in the policy sued on was continuous and that on September 26, 1927, he still suffered such total and permanent disability, then the premium due on said date was thereby waived, and if you so believe from the evidence you should find for the plaintiff in the sum of $4,850.64, with interest from June 15, 1929. If you do not so believe from the evidence, you should find for the defendant."

This instruction was granted at the request of the plaintiff.

"The court instructs the jury that in order for the plaintiff to recover in this case, she must prove to your satisfaction by the greater weight of the evidence that on September 26, 1927, Johnathan P. Worley was:

(1) "Totally disabled and by such disablement prevented from engaging in any occupation whatsoever for remuneration or profit, and

(2) "That such total disability would be (a) continuous for life or (b) had existed continuously for a period of three months.

"And upon the failure of the plaintiff so to prove one or both of the above requirements, you must find for the defendant."

This instruction was granted at the request of the defendant.

As previously stated, the court told the jury that the 1926 premium had no bearing upon the case.

It will be noted from the instructions that the trial court did not attempt to define the meaning of "total and permanent disability" other than to refer to the definition of that term embraced in the policy, which, of course, meant

according to its strict letter that if the insured was not prevented by his disability from engaging in "any occupation whatsoever for remuneration or profit" on September 26, 1927, then he was not entitled to a waiver of the 1927 premium.

When the instructions were applied to the evidence, it having been shown that the insured did perform some light work incidental to his farming occupation, the jury were obliged to find for the defendant company. Upon the return of their verdict counsel for the plaintiff immediately moved to set aside the verdict because (1) of erroneous instructions and (2) it was contrary to the law and unsupported by the evidence. The court, in sustaining the motion to set aside the verdict, gave as its reason for doing so that the jury had been erroneously instructed; that if either the 1926 or 1927 premium had been waived on account of the disability of the insured, the policy was in force at his death; that the jury had found that the insured was not entitled to have the 1927 premium waived; that whether the 1926 premium was waived was a question of law; that the disability having occurred prior to the due date of the 1926 premium and the company having endorsed the waiver of premiums on the policy and having thereby admitted the disability of the insured to be total and permanent, the 1926 premium was waived; that he having paid the 1926 premium, it should have been returned to him or applied on the policy; that the company having retained it, the premium should have been treated as applied on the policy; and that if such application had been made, the policy would have been in force when the insured died. The court held as a matter of law that the 1926 premium was waived. The case of *Swann* v. *Atlantic Life Ins. Co.*, 156 Va. 852, 159 S. E. 192, was relied upon by the court in making its ruling. Judgment was entered in favor of the plaintiff for the net proceeds of the policy.

We are in accord with the final conclusion reached by the trial court—that is, that the policy was in force when

the insured died and that the beneficiary named therein was entitled to a judgment against the insurance company for the net proceeds of the policy. However, we do not rest our decision on the point that the 1926 premium was waived as a matter of law. In our view of the case it is not necessary to decide that point and upon it we withhold any expression of opinion. If the insured was entitled to have the 1927 premium waived, then the beneficiary would be entitled to recover because a waiver of that premium would have extended the life of the policy beyond the death of the insured.

Counsel for the insurance company earnestly contend that the issue of whether the 1927 premium was or was not waived was properly submitted to the jury under the instructions and the evidence, and they having found that the 1927 premium was not waived, the court had no right to disturb that finding because it was in accordance with the instructions. It is also urged that this court should now reverse the judgment of the trial court, reinstate the verdict and enter final judgment thereon.

It appears that the case was tried upon a misconception of the true meaning of the term "total and permanent disability." The trial court was of the opinion that the meaning of those words was defined in the policy, and if the insured was able to engage in "any occupation whatsoever for remuneration or profit" when the 1927 premium became due, then he was not entitled to have that premium waived. The view of the trial court was concurred in by the plaintiff and the defendant, for each of them requested, and the court granted, the instructions we have set forth above, which clearly show that both parties, as well as the court, thought that the strict definition of the language in question found in the policy should be applied in this case. This limited and restricted interpretation is in conflict with the interpretation given that particular language by the courts of almost all the States, as well as the Federal courts. The interpretation required by the instructions and the strict language of the policy and for

which the defendant contends, would render it necessary, before the insured would be entitled to have the premiums waived and to receive the income disability payments, that he be reduced to a state of absolute helplessness, both physically and mentally. In other words, if the insured were totally disabled physically, and retained his mental faculties, it would be possible for him to engage in an occupation for remuneration or profit, and under such circumstances he would not be entitled to waiver of premiums and disability payments under a strict construction of the language of the policy, so long as that condition existed.

Total and permanent disability, as used in insurance policies, is a relative expression. It does not mean absolute incapacity, mental and physical. The term must be construed rationally and practically and the trial court should have instructed the jury on the meaning of total and permanent disability in the light of the almost unanimous judicial interpretation of those words. The jury should have been told that the disability contemplated by the policy did not mean a state of absolute helplessness, but meant the inability to do substantially all of the material acts necessary to the prosecution of any occupation for remuneration or profit in substantially the customary and usual manner in which such occupation is prosecuted. This would have been an equitable and reasonable interpretation of the term. Contracts of insurance should receive a reasonable construction so as to effectuate the purposes for which they are made. Legal effect should be given to the language used, and the object to be accomplished by the contract should be considered in interpreting it. Such a rule would not require the literal interpretation which would render it necessary that the insured be in a condition of complete helplessness, mentally and physically, and totally unable to do anything at all.

In *Equitable Life Assur. Society* v. *Serio*, 155 Miss. 515, 124 So. 485, 486, it is said:

"It is true that under *Shipp* v. *Metropolitan Life Ins. Co.,* 146 Miss. 18, 111 So. 453, the disability must be both total and permanent at the same time, but exactly in the same manner that this court and practically all the other courts of this country have refused to interpret the term 'total disability' as meaning entire or absolute helplessness, so we refuse to interpret the term 'permanent disability' as one which must at all events be a lasting one without any hope or possibility of a recovery or change for the better. As already said, courts must give these contracts a reasonable interpretation, an interpretation which will stand the test of honesty of purpose in their meaning, and which will square the transaction between the parties in making the contract with some valuable object in contemplation at the time. If the term 'total disability' should be held to mean utter helplessness, and 'permanent disability' be held to mean utter hopelessness, then about the only case covered would be where the insured has lost both arms and both legs or some other such a case so rare as not to be for a moment reasonably considered as ever having been within the contemplation of the insured at the time of the taking of the policy. It would come to this: To give said terms the strict or literal interpretation stated would be to convict a reputable insurance company of having put out among our people, and having collected from them premiums on, a policy provision which in effect would be scarcely more than a cheat, a pretense, and a fraud. Certainly no such could have been intended."

In *Aetna Life Ins. Co.* v. *Spencer,* 182 Ark. 496, 32 S. W. (2d) 310, 312, we find this statement of the rule:

"Total disability is generally regarded as a relative matter which depends largely upon the occupation and employment in which the party insured is engaged. This court has held that provision in insurance policies for indemnity in case the insured is totally disabled from prosecuting his business do not require that he shall be absolutely helpless, but such a disability is meant which renders him unable to perform all the substantial and

material acts of his business or the execution of them in the usual and customary way. *Industrial Mutual Indemnity Co.* v. *Hawkins,* 94 Ark. 417, 127 S. W. 457, 29 L. R. A. (N. S.) 635, 21 Ann. Cas. 1029; *Brotherhood of Locomotive Firemen & Enginemen* v. *Aday,* 97 Ark. 425, 134 S. W. 928, 34 L. R. A. (N. S.) 126, and *Aetna Life Ins. Co.* v. *Phifer,* 160 Ark. 98, 254 S. W. 335.

"Thus it will be seen that our court makes no distinction between accident policies and life insurance policies containing total disability clauses. The construction placed upon policies of this sort follows the general trend of authority in the United States. Case notes to 41 A. L. R. at page 1376; 37 A. L. R. at page 151; 24 A. L. R. at page 203; and 7 Ann. Cas. page 815."

The annotator in 79 A. L. R. 857, states the following general proposition in an exhaustive case note: "Recent decisions are in accord with the weight of authority in supporting the liberal rule that the total disability contemplated by an accident policy, or a life insurance policy containing a disability clause, does not mean, as its literal construction would require, a state of absolute helplessness; but the total disability contemplated means inability to do all the substantial and material acts necessary to the prosecution of the insured's business or occupation, in his customary and usual manner." In support of this rule cases from nearly all of the State and Federal courts are cited. The annotator shows that the courts, in dealing with this question, make no distinction between an accident policy and a life insurance policy which contains a disability clause.

The cases construing total disability in contemplation of an accident policy are collected in exhaustive case notes in 24 A. L. R. 203, 37 A. L. R. 151, 41 A. L. R. 1376 and 51 A. L. R. 1048.

When the case of *Swann* v. *Atlantic Life Ins. Co.,* 156 Va. 852, 159 S. E. 192, was first before this court the sole question involved was one arising from the pleadings. The admitted facts stated in the replication and upon

which the opinion was largely based were entirely different from the facts presented in the case at bar. The policy provision there involved was also entirely different from the one submitted here. In the present case due proofs were submitted to the company and regularly approved by it, while in the *Swann Case* no proofs were ever submitted. For these reasons it clearly appears that that case has no bearing upon the determination of this case.

 In the case at bar the evidence discloses that the insured, prior to receiving his injury, was a substantial and prosperous farmer. He had accumulated through his farming activities three tracts or farms. He had been accustomed to performing hard manual labor in the conduct of his farming business such as one is compelled to do who would succeed as he had done. He performed a large part of the labor required, such as ploughing the fields, sowing and harvesting the crops, and the many other ordinary duties required by one engaged in farming.

In falling from the barn roof he landed in a sitting position and the jar or jolt caused his bowels or entrails to fall or become dislocated. His injuries were of a serious nature and he was confined to his bed for several months. Later he was able to get out of bed and upon being examined by the physician of the insurance company he was required to wear a brace to hold his bowels in proper place. On June 29, 1927, more than nine months after the accident and just three months before the due date of the 1927 premium, the insured was examined by Dr. St. John, who was making the examination for the insurance company, and he reported that at that time the insured was suffering from pain in his back and stomach; that he was stooped; that his knee jerks were sluggish; that his abdominal muscles were very flabby; that his chest was sunken; that most of his belly was below the navel. The doctor reported that the insured would be unable to work during July and August on account of his injury; that he still had traumatic neurasthenia as a result of the fall:

that from his appearance the doctor in his opinion estimated an improvement of from forty to fifty per cent. The doctor also reported that the insured was not then able to work and if worries and cares were placed upon him he would be liable to a set-back or relapse. The doctor concluded that if he were allowed to do a little work, with encouragement and confidence, he would soon be able to resume his occupation of farming. The doctor also reported that the insured was not a malingerer.

The testimony of the members of his family and neighbors, and that of the defendant's witnesses, touching his physical condition, discloses that even until his death on June 2, 1929, he was never a well man; that he constantly complained of pain; that when he attempted to work he would have to quit on account of pain; that he was never able to work a day after the injury and that on September 26, 1927, when the 1927 premium became due, he could do no substantial part of his farming work. It is true he continued to operate his farms, but he did it through others whom he employed. He also had a contract to operate a school bus, but he did not personally operate it and was physically unable to do so. His mind was always clear and he traded in cattle and sold his products. He was able to perform light work and often feed the chickens. He attended to his banking business. From a careful examination of all of the evidence it is clear that the insured was never able to do any substantial part of his work at any time after his injury.

The facts stated are taken largely from the testimony of the defendant's own witnesses and there is no conflict in it. It is quite sufficient to show that when the 1927 premium became due the insured was entitled to have it waived because at that time he was totally and permanently disabled and unable to follow any occupation for remuneration or profit under the terms of the policy, as interpreted by judicial construction in an almost unbroken line of cases to which we have already referred.

It may be that the insured was physically able to perform certain light work or to do a few things for compensation, but that would not be sufficient to show that he was not entitled to the waiver of the 1927 premium within the meaning of the policy. Total and permanent disability provisions should be liberally construed in favor of the insured. There is a great difference between absolute helplessness and normal capacity to work. It would not be reasonable to say that in order to constitute total and permanent disability within the meaning of the policy, the insured must be unable to perform any work at all which might produce some compensation. If policies of this kind were so construed, in many cases they would be of little value to those who have bought them. Our conclusion is that the evidence shows that the insured's condition was such that he could not, in the exercise of ordinary prudence, perform any substantial part of the duties necessary to a practical prosecution of his farming business in substantially his customary and usual manner, disregarding the trivial work he may have done which was not material or substantial in his vocation, but which may have been incidental thereto, and that, therefore, he was totally and permanently disabled when the 1927 premium became due and was entitled to have it waived.

The final question is, what should be the judgment of this court upon the record before us? The uncontradicted evidence discloses that the insured was entitled to have the 1927 premium waived, and when this is done, it is conceded that the policy was in force when the insured died. It would be useless to reverse the judgment of the trial court and remand the case for a new trial on account of any error of law that may have been committed, because upon a new trial under proper instructions there is no reason to believe that the insurance company could prevail. Upon the merits, the evidence entitles the plaintiff to a judgment upon the policy. No other proper judgment could be entered. The record before this court is

such that the court can attain the ends of justice by affirming the judgment of the trial court; therefore, the case will be disposed of under Code, section 6365, and the judgment of the trial court in favor of Mrs. Kennedy E. Worley against the Atlantic Life Insurance Company, for the net proceeds of the policy, is affirmed.

*Affirmed.*

HOLT and EPES, JJ., dissenting.