## Richmond

JOHN O. OWEN v. THE CHESAPEAKE CORPORATION OF VIRGINIA, EMPLOYER, AND THE AETNA CASUALTY AND SURETY COMPANY, INSURER.

October 8, 1956.

Record No. 4614.

Present, Hudgins, C. J., and Eggleston, Spratley, Miller and Whittle, JJ.

The opinion states the case.

*Edward E. Lane* and *Thomas P. Harwood, Jr.* (*Lane, Rogers and Paul,* on brief), for the appellant.

*Robert R. Parrish* and *Malcolm M. Christian* (*Parrish, Butcher and Parrish,* on brief), for the appellees.

WHITTLE, J., delivered the opinion of the court.

■ Owen, an employee of the Chesapeake Corporation, was injured on January 23, 1950, in an industrial accident which occurred in the course of his employment, wherein he suffered caustic acid burns to both eyes.

Prior to the accident it had been determined that Owen had defective vision which was corrected by the use of glasses. However, as a Class A pipefitter he did not use glasses in the performance of his work but only for reading when off duty.

Several hearings were held before the Industrial Commission in which awards were made. On December 30, 1952, a supplemental agreement was entered into which provided for compensation at the rate of $20 per week for 120 weeks, effective retroactively to February 1, 1951, subject to a credit of 70 weeks compensation which had been paid under an award dated July 1, 1951. The Commission having determined the actual visual loss to be 75 per cent in each eye, with adjustment for the pre-existing visual disability of 20 per cent in the right eye and 10 per cent in the left, entered an award for loss of vision of 55 per cent in the right eye and 65 per cent in the left eye.

Later claimant alleged a change of condition and requested a hearing before the Commission. (Code, § 65-95) The case was reopened in April, 1954, and examinations were made to determine the condition of claimant's eyes. There were very slight variations in the reports of the three doctors who examined claimant as to the loss of vision due to the accident, and it was conceded that "the vision uncorrected amounts to industrial blindness".

On April 4, 1955, Hearing Commissioner Crenshaw rendered his opinion in which he found that claimant was selling his uncorrected but defective vision to industry, and held that the degree of loss of vision be determined on the basis of the uncorrected vision. However, he concluded that the ability of the claimant to work and to engage in gainful employment should be taken into consideration in determining the loss of vision as both eyes had been injured in the same accident.

From the medical evidence the Commissioner found that claimant had suffered "a loss which was less than a total loss of vision and less than a total destruction of vision", and determined that a degree of useful vision remained in both eyes. He thereupon increased the award from 55 to 80 per cent loss of vision in the right eye and from 65 to 75 per cent in the left eye.

Thereafter, at the request of claimant, the decision of the Hearing

Commissioner was reviewed by the full Commission, and on May 9, 1956, the majority opinion of the Commission approved "the findings of fact and conclusions of law" of the Hearing Commissioner. From this ruling claimant was granted an appeal.

The issues presented are:

(1) Should claimant's disability be determined by his corrected vision as suggested by the employer, or should his disability be determined by his uncorrected vision as contended by claimant and as the Commission found; and if determined by the uncorrected vision,

(2) Is his ability to work a factor to be considered in determining the degree of loss of vision where both eyes have been injured in the same accident?

In treating the first issue, the Commissioner found, from uncontroverted evidence, that prior to the accident claimant was selling to industry uncorrected vision, and that after the accident, without the aid of glasses, the vision in each eye had been reduced to a fraction which by Snellen's Chart is equivalent to industrial blindness, and, as aforesaid, determined claimant's degree of loss without recourse to the artificial aid which proper glasses would render. This finding is in accord with our holding in *Walsh Construction Co.* v. *London*, 195 Va. 810, 80 S. E. 2d 524.

█ Considering the second issue, claimant contends that as the Commission has found that the injury to his eyes amounts to industrial blindness no consideration should be given to his ability to work, and that he should be indemnified for the loss of his eyes. In this connection, however, it was conceded that as a result of the accident claimant was only reduced from a Class A to a Class B pipefitter, with no reduction in wages.

The Commission, in treating the issue, stated:

"That being our finding (the ruling on the first issue), does Section 65-53(18)[1] make mandatory an award for total disability? I

---

[1] "§ 65-53. CASES IN WHICH INCAPACITY SHALL BE DEEMED TO CONTINUE FOR PERIODS SPECIFIED IN SECTION; COMPENSATION.—

In cases included by the following schedule the incapacity in each case shall be deemed to continue for the period specified and the compensation so paid for such injury shall be as specified therein and shall be in lieu of all other compensation.

\* \* \* \* \* \* \*

"(18) The loss of both hands, both arms, both feet, both legs or both eyes, or any two thereof, in the same accident, shall constitute total and permanent incapacity, to be compensated according to the provisions of § 65-51.

think not. If there was a loss by enucleation, the answer, of course, would be in the affirmative. But where the loss is a loss of use, the degree of loss of use must be total before sub-section 18 becomes controlling. If it is less than total, compensation must be based upon a partial loss of use of two members. *McCarrell* v. *Harrisonburg Tel. Co.,* 163 Va. 272, 172 S. E. 241.

"The statute sets no standard by which loss of use is to be gauged. Medical estimates or measurements certainly do not furnish the sole criteria. We perceive that the law requires us to take all of the evidence into account, and in its light determine whether the loss of use is total. In a recent case (*Virginia Oak Flooring Co.* v. *Chrisley,* 195 Va. 850, 80 S. E. 2d 537) which may be said to be the converse of that at bar, the evidence was that loss of use of two legs was medically less than total, while the whole evidence was that the members could not be used in gainful employment. The Court said that the ability of the employee to engage in employment is a proper element for consideration in determining the extent of loss of use of two members. Taking it into consideration here, it must be said that the loss of use is less than total."

We agree with the Commission's reasoning and its conclusion. It will be noted that Code, § 65-53(18) requires that an award made thereunder (where loss of use is total) shall be in accordance with § 65-51, which section deals with "total incapacity" and is not directly involved here. In determining whether the loss of use is total, under the sections involved, claimant's ability to work must be taken into consideration, as well as the actual medical loss of use. In considering these two sections (65-53 and 65-51) which must be read together, Chief Justice Hudgins, in *Virginia Oak Flooring Co.* v. *Chrisley, supra,* (195 Va., at p. 857; 80 S. E. 2d, at p. 541) said:

"The question of law presented is whether, in determining the extent of the loss of use of two members injured in the same accident, the ability of the injured employee to engage in gainful employment is a proper element for consideration. We think it is.

"The phrases 'total and permanent loss' and 'loss of use' of a leg do not mean that the leg is immovable or that is cannot be used in walking around the house, or even around the block. They do mean that

\*    \*    \*    \*    \*    \*    \*

"In construing this section the permanent loss of the use of a member shall be held equivalent to the loss of such member and for the permanent partial loss or loss of use of a member compensation may be proportionately awarded."

the injured employee is unable to use it in any substantial degree in any gainful employment. This is the fair and reasonable interpretation which has been placed upon the phrase 'total and permanent disability', * * *. *Atlantic Life Ins. Co* v. *Worley*, 161 Va. 951, 960, 172 S. E. 168, * * *." See *Gobble* v. *Clinch Valley Lumber Co.*, 141 Va. 303, 308, 127 S. E. 175.

The converse of this reasoning is applicable to the instant case. While the injury sustained by claimant is equivalent to industrial blindness, making the loss medically total, it is conceded that his "loss of use" is less than "total", thus, under the wording of the statutes involved, his ability to engage in gainful employment should be considered. *American Zinc Co.* v. *Lusk*, 148 Tenn. 220, 255 S. W. 39.

For the reasons stated the decision of the Commission is

*Affirmed.*