## Richmond

## BORDEN, INC. v. JOSEPH E. NORMAN

November 23, 1977.

Record No. 761211.

Present: All the Justices.

*Allan S. Reynolds; Frank B. Miller, III (White, Reynolds, Smith, Winters & Lucas; Sands, Anderson & Marks,* on brief), for appellant.

*Russell I. Townsend, Jr. (Townsend, Roy and Forehand,* on brief), for appellee.

HARRISON, J., delivered the opinion of the Court.

Borden, Inc., seeks a reversal of an award made to Joseph E. Norman by the Industrial Commission of Virginia under Code § 65.1-54, after the Commission found that Norman, an employee of Borden, Inc., sustained an industrial accident and suffered compensable injuries. Norman is 55 years old, has a sixth-grade education and had been employed as a mechanic by appellant for 22 years. The final diagnosis of the injuries he received in a fall, which he sustained while at work, were briefly summarized at the time of his discharge from Norfolk General Hospital as follows:

"1. Comminuted fracture of the right tibial plateau with depression of lateral tibial plateau.
"2. Severe laceration left leg.
"3. Slough of wounds of left and right leg, requiring skin grafting."

Norman remained in the hospital a total of 81 days after his accident. He was further hospitalized for 38 days in 1975, at which time a graft was done to resurface the anterior aspect of his left lower tibia. It is unnecessary to review in depth the numerous and detailed medical reports. Admittedly, Norman sustained severe, painful and permanent injuries, principally to his right knee. A memorandum of agreement was executed on May 7, 1974, for the payment of compensation to him from May 7, 1974, until terminated in accordance with the provisions of the Workmen's Compensation Law of Virginia.

On December 8, 1975, appellant filed an application for a hearing on the ground of a change of condition, alleging that Norman had reached his maximum improvement and should be rated for permanent disability to both legs. A hearing was held and upon review a majority of the Commission found that Norman suffered a permanent loss of the use of both legs of such extent as to render him unable to market his remaining capacity for work. The Commission held that he was permanently and totally disabled, as defined in Code § 65.1-56(18), and awarded

him the maximum compensation provided by Code § 65.1-54 for total and permanent incapacity. Commissioner Evans dissented.

While the medical testimony is extensive it is not in serious conflict. Dr. Joel Andrew Mason, an orthopedic surgeon, was Norman's attending physician. He rated Norman's permanent partial disability to his lower right extremity at 30%. In his final report, dated January 23, 1976, Dr. Mason stated that Norman "may very well ultimately come to a surgical reconstruction of the right knee such as a total knee replacement with insertion of a prosthetic device for his right knee, or perhaps a fusion of his right knee (locking his knee)". Dr. Mason did not feel that Norman's symptoms were severe enough at that time to warrant the reconstruction procedure.

On March 29, 1976, Norman was examined by Dr. Gerald Weitzman, an orthopedic surgeon in Portsmouth. Dr. Weitzman concluded: "This patient was involved in a work accident on April 29, 1974, sustaining comminuted fracture of his right proximal tibia involving the knee joint and a laceration of the left lower leg. As regards the left lower leg, there is an intact skin flap graft in place. For this the patient is rated as having a 10% permanent physical impairment to the left lower extremity. As regards the patient's right knee, he is rated as having a 50% permanent physical impairment to the right lower extremity."

The injury to Norman's left leg was described by Dr. Mason as a severe 16-inch laceration which required "a thorough irrigation and debridement". Two-thirds of the laceration "healed nicely". The remaining one-third required multiple plastic surgical procedures which were performed by Dr. William Ruffin, Jr. Dr. Ruffin reported that he had no reason to anticipate any further problems with reference to the leg and the reconstructive surgery which he had performed. He estimated that Norman sustained a 15% permanent loss of function of his left leg because of the associated scarring incident to the injury, and the multiple surgical procedures, which resulted in a decreased blood supply to the area of the ankle and foot. Dr. Ruffin said that prolonged standing would cause "variable amounts of ankle swelling with associated dull aching" and that the leg "has a lessened ability to withstand trauma". Ruffin concluded his report by admitting that the factors enumerated by him were somewhat vague and open to debate, and that it was difficult to

assign a permanent loss of function. He said that he arrived at a figure of 15% which he felt would be satisfactory to all parties concerned.

Accepting the estimates of disability most favorable to Norman, the record shows a 15% permanent loss of function of the left leg and a 50% permanent physical impairment of the right leg. The question remains whether this constitutes a total industrial loss of use of both legs to Norman. While Dr. Mason stated that he felt that Norman was able to resume his normal activities, and would be able to perform most of the duties of his job, he said that his lifting of weights should be limited to 25 pounds and this on a very infrequent basis. Dr. Mason further said that Norman should not do any significant stooping or bending at the knee level. Roland Hargrove, acting plant supervisor for appellant, testified that because of these restrictions on Norman's activity, there was no work at the Borden plant which Norman was qualified to perform.

Dr. Weitzman said that he felt Norman was "unfit for any occupation other than a sedentary type one". On March 21, 1975, Dr. Ruffin said that from his "point of view" there was no reason why Norman could not resume some form of gainful employment but that since Dr. Mason was more familiar with Norman's severely injured knee, Mason should provide the final judgment regarding his overall fitness. In his letter of August 18, 1975, Dr. Ruffin again indicated that in his judgment Norman could return to some form of gainful employment.

Norman and his wife testified that on April 15, 1976, he still had pain associated with both legs. Mrs. Norman said that her husband was able to do very little around the house except sit and watch television with his foot propped up. There is no evidence that Norman has made any effort to obtain employment of any kind other than with appellant. Norman has not worked since the accident, and he testified that he did not know if he could find a sitting down job "the way that my legs hurt me". He takes aspirin every three to four hours and walks with a cane.

The issue involved here can be tersely stated. Is Norman's loss of use of both legs less than total? If so, he is not entitled to recover under Code § 65.1-56(18), which provides:

"The loss of both hands, both arms, both feet, both legs or both eyes, or any two thereof, in the same accident, or an

injury for all practical purposes resulting in total paralysis as determined by the Commission based on medical evidence, or an injury to the brain resulting in incurable imbecility or insanity, shall constitute total and permanent incapacity, to be compensated according to the provisions of § 65.1-54."

The evidence is overwhelming that the injury to Norman's left leg, although serious and painful, and requiring extensive plastic surgery, was not a particularly disabling or critical injury. There is no medical evidence showing limitation of motion in the left knee or ankle and the possibility of swelling in the left ankle does not constitute a total loss of use of the leg. As Commissioner Evans pointed out in his dissent, the minor disability rating (10% by one doctor, 15% by another) of the lower left extremity is based primarily on subjective complaints. In fact, appellee concedes that he would not have been able to return to his former job as a mechanic even if he had sustained no injury to his left leg.

It is Code § 65.1-54 which provides compensation "when the incapacity for work resulting from the injury is total". The section fixes the amount and limits the payment of compensation to a period no greater than 500 weeks, except where compensation is payable for total and permanent incapacity as defined by Code § 65.1-56(18). In this event compensation continues for the lifetime of the injured employee without limit as to total amount. However, compensation can be recovered under Code § 65.1-56(18) for loss of the lower limbs *only* where there is a *loss* of *both* legs or a *loss* of *the use* of *both* legs.

In *Flooring Co.* v. *Chrisley*, 195 Va. 850, 80 S.E.2d 537 (1954), we held that in determining the extent of the loss of use of two members injured in the same accident, the ability of the injured employee to engage in gainful employment is a proper element for consideration. We further said that "[t]he phrases 'total and permanent loss' or 'loss of use' of a leg do not mean that the leg is immovable or that it cannot be used in walking around the house, or even around the block. They do mean that the injured employee is unable to use it in any substantial degree in any gainful employment". 195 Va. at 857, 80 S.E.2d at 541.

And then we quoted with approval from *Atlantic Life Ins. Co.* v. *Worley*, 161 Va. 951, 960, 172 S.E. 168, 172 (1934), where the

expression "total and permanent disability" was used in an insurance policy:

> " '. . . [T]he disability contemplated by the policy did not mean a state of absolute helplessness, but meant the inability to do substantially all of the material acts necessary to the prosecution of any occupation for remuneration or profit in substantially the customary and usual manner in which such occupation is prosecuted.' " 195 Va. at 857, 80 S.E.2d at 541.

*Flooring Co.* v. *Chrisley, supra,* involved an employee who suffered severe comminuted fractures of the upper third of the femur in each of his legs. There was medical testimony that Chrisley would probably never be able to return to any work that he was fitted to do, or be able to support himself at any gainful employment. One physician estimated that Chrisley suffered a 75% disability of his right hip and a 55% disability of his left thigh and was "unable to fulfill any of the requirements necessary for physical work". The Commission held that his injury was total, and we affirmed. We held that "[i]f two members are injured in the same accident and it is proven that there is total and permanent loss or loss of use of both members resulting therefrom, compensation is computed under section 65-51 [presently § 65.1-54]". 195 Va. at 860, 80 S.E.2d at 542-43.

In *Morris* v. *Pulaski Veneer Corp.,* 183 Va. 748, 33 S.E.2d 190 (1945), the injured employee, in successive accidents while working for the same employer, lost the first, second, third and fourth fingers and a portion of the palm of his right hand in the first accident, and lost his left hand just above the wrist in a second accident. The medical testimony showed that he was totally disabled because he was a manual laborer and had to work with his hands. We concluded that he was permanently and totally incapacitated.

In *Owen* v. *The Chesapeake Corp.,* 198 Va. 440, 94 S.E.2d 462 (1956), an employee sustained an injury to both eyes by reason of acid burns. The Commission found that the injury amounted to "industrial blindness". However, it also found that the claimant had suffered less than a total loss or a total destruction of vision, and that, notwithstanding the accident, the claimant had only been reduced to a lower grade of work and remained employable. It decided that Owen was not entitled to an award of total disability under § 65-53(18) (presently § 65.1-56(18)), stating

that where the loss is a loss of use the degree of loss of use must be total and if less than total compensation must be based upon a partial loss of use of two members. We agreed with the Commission's reasoning and its conclusion.

In *McCarrell* v. *Harrisonburg Tel. Co.*, 163 Va. 272, 172 S.E. 241 (1934), the claimant sustained an accident in which the Commission found he suffered a permanent partial loss (50%) of each foot and computed compensation upon an amount which was the equivalent of the total loss of use of one foot. McCarrell argued the inequality of this method of computation on the ground that a person who has sustained an injury of 50% of the use of both feet is more seriously incapacitated than one who has sustained the total loss of one foot. In affirming we recognized the persuasiveness of appellant's argument but stated that more properly it should have been addressed to the legislature. We approved the award of the Commission and quoted from its opinion the following paragraph:

> " 'A careful reading of the act discloses that section 32 (s) applies to the "loss of both hands, or both arms, or both feet, or both legs, or both eyes, or any two thereof, in the same accident," in the sense that there is a total loss of function of the members mentioned.' " 163 Va. at 275, 172 S.E. at 242.

No case has been brought to our attention where an award was made under § 65.1-56(18), and in which a court held that a 10% to 15% impairment of one leg, and a 30% to 50% impairment of the other, constituted a total loss of the use of both legs. And the medical evidence does not support such a finding here. As early as November 24, 1974, Dr. Mason wrote that Norman could go to full weight bearing on both legs and gradually resume his normal activities. Dr. Mason then felt that he would be able to return to work in the next two or three months but of a lighter nature which did not require prolonged standing, walking, climbing or heavy lifting. In May, 1975, Dr. Mason, in an addendum to a report, said: "It was my feeling that he could go back to light duty work at any time if he is able to tolerate the light duty work. If not he will have to stop working." More emphatically, on January 23, 1976, Dr. Mason wrote Norman's employer that he felt that Norman was able to resume his normal activities. He also wrote that when the matter was discussed with Norman "it was our joint feeling that he would be

able to perform most of these duties", avoiding, however, activities which required stooping, bending, kneeling or lifting weights in excess of 25 pounds.

In March, 1975, and in July, 1975, Dr. Ruffin expressed the opinion that there was no reason why Norman should not resume some form of gainful employment. Only Dr. Weitzman, who saw Norman one time, some two years after the accident, stated that he felt Norman to be unfit for any occupation other than a "sedentary type one".

It is clear that both Doctors Mason and Ruffin were of opinion that Norman's leg injuries were not total and that he was able to follow some form of gainful employment. It is not in dispute that Norman suffered an accident that arose out of and in the course of his employment and is entitled to certain benefits provided by the Workmen's Compensation Act. However, we cannot hold from the record before us that Norman has suffered a loss of both legs, or a loss of the use of both legs, within the meaning of Code § 65.1-56(18).

Accordingly, the award of the Industrial Commission is reversed and this case is remanded for such further proceedings as may be indicated consistent with the views herein expressed.

*Reversed and remanded.*