COURT OF APPEALS OF VIRGINIA

Present: Judges Benton, Coleman and Willis
Argued at Alexandria, Virginia


GUY M. SINCLAIR
                                              OPINION BY
v.  Record No. 2367-95-4        JUDGE JAMES W. BENTON, JR.
                                          SEPTEMBER 10, 1996
SHELTER CONSTRUCTION CORPORATION and
 NATIONWIDE MUTUAL INSURANCE COMPANY


        FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

            Laurie D. Waters (Jack T. Burgess &
            Associates, P.C., on brief), for appellant.

            Roger L. Williams (Cathie W. Howard; Williams &
            Pierce, on brief), for appellees.


    Guy M. Sinclair injured his eye in a work-related incident. He appeals from the Workers' Compensation Commission's award granting him permanent partial disability benefits but allowing his employer, Shelter Construction Corporation, a credit for his pre-existing, uncorrected visual acuity. Sinclair contends that he should have been awarded one hundred percent, rather than fifty percent, permanent partial disability. Although the commission did not err in granting a credit, we hold that the commission misapplied Rule 13 of the Rules of the Virginia Workers' Compensation Commission when it reduced Sinclair's award below one hundred percent disability.

                            I.

    The facts are undisputed. Sinclair, a carpenter employed by Shelter Construction, sustained an injury by accident when a circular saw propelled a piece of wood into his right eye. Prior

to the injury, Sinclair had a visual acuity measurement of 20/80 in his right eye, corrected to 20/20 with eyeglasses. As a result of the injury by accident, Sinclair's right eye developed a hyphema. His vision in that eye deteriorated to 20/300. With eyeglasses, his vision is now corrected to 20/30.

In his claim for benefits pursuant to Code § 65.2-503(B)(14), Sinclair alleged a one hundred percent loss of vision. Shelter Construction agreed that Sinclair's post-injury uncorrected vision acuity was 20/300. However, it contends that because Sinclair's pre-injury measurement of 20/80 amounted to a fifty percent loss of visual acuity according to Snellen's Chart, as adopted in Rule 13, he suffered only a fifty percent loss of visual acuity as a result of the injury. The deputy commissioner ruled that Sinclair suffered a one hundred percent loss of vision. Finding that Sinclair's pre-existing visual deficiency did not materially affect his overall ability to perform his work, the deputy commissioner ruled that Shelter Construction was not entitled to an offset for Sinclair's pre-injury visual acuity measurement.

On review, the commission found that Shelter Construction was entitled to an offset for Sinclair's pre-existing 20/80 visual acuity measurement because it exceeded the level of compensability. The commission awarded Sinclair compensation for a fifty percent loss of vision in his right eye because his pre-injury acuity was fifty percent on Snellen's Chart.

- 2 -

"'[C]onclusions of the Commission upon questions of law, or mixed questions of law and fact, are not binding on [appeal].'" City of Waynesboro v. Harter, 1 Va. App. 265, 269, 337 S.E.2d 901, 903 (1985) (quoting Brown v. Fox, 189 Va. 509, 517, 54 S.E.2d 109, 113 (1940)). For purposes of determining compensation for permanent loss under Code § 65.2-503, the following rules apply:

> [T]he permanent loss of the use of a member shall be equivalent to the loss of such member, and for the permanent partial loss or loss of use of a member, compensation may be proportionately awarded. Compensation shall also be awarded proportionately for partial loss of vision or hearing.

Code § 65.2-503(D). The commission has adopted Snellen's Chart for measuring vision acuity loss. See Commission Rule 13. We must decide whether under Rule 13 Sinclair is entitled to fifty or one hundred percent disability resulting from his compensable injury.

In Walsh Construction Co. v. London, 195 Va. 810, 80 S.E.2d 524 (1954), the Supreme Court stated that because the Workers' Compensation Act "is silent as to whether corrected or uncorrected vision should be the basis for determining the extent of eye injuries, it should be interpreted and applied in a practical and common-sense manner so as to accomplish the purposes of the act." Id. at 817, 80 S.E.2d at 528. In London, the employee had a pre-injury visual acuity of 20/200 correctable

to 20/20.  As a result of an accident and subsequent infection, the employee's eye was removed.  Id. at 812, 80 S.E.2d at 525-26.  Although the employee's uncorrected pre-injury vision loss was one hundred percent on Snellen's Chart, the Supreme Court awarded full disability for the loss of the eye.  The Court reasoned that the employer was not entitled to a credit for the employee's pre-existing one hundred percent vision loss because the employee had "lost the source of his vision and all means of correcting the eye to normal use."  Id. at 818, 80 S.E.2d at 528.  The loss was so severe that the employee's pre-existing vision loss was inconsequential.

Before the commission, Sinclair alleged that he did not wear eyeglasses at work to perform his pre-injury work and that his pre-existing, uncorrected visual acuity was not disabling.  Shelter Construction did not dispute Sinclair's claim but, instead, asserted that with the aid of eyeglasses Sinclair could still perform his work.  The deputy commissioner found "that Sinclair . . . was not required to wear corrected lenses in his job prior to the injury."  The commission's decision did not address this aspect of the record.  Significantly, however, the commission made no findings contrary to the deputy commissioner's finding.

The employee's ability to perform without eyeglasses has some bearing on the resolution of this case because of the similarity to the circumstance in Owen v. The Chesapeake

Corporation, 198 Va. 440, 94 S.E.2d 462 (1956). The evidence in this case proves, as in Owen, "that prior to the accident [Sinclair] was selling to the industry uncorrected vision, and that after the accident, without the aid of glasses, the vision in [the injured] eye had been reduced to a fraction which by Snellen's Chart is equivalent to industrial blindness." 198 Va. at 442, 94 S.E.2d at 463. Also significant in this case is the magnitude of the loss that Sinclair suffered in the incident. Indeed, although the employee in London wore eyeglasses prior to the accident and had uncorrected vision acuity of "20/200, which is tantamount to a total loss of vision," 195 Va. at 817, 80 S.E.2d at 528, the Court allowed the employer no credit. Despite proof in London that the employee was industrially blind before the accident, the Court determined that the employee's pre-existing visual impairment was minuscule in comparison to the loss caused by the injury.

In Virginia Fibre Corp. v. Moore, 17 Va. App. 691, 440 S.E.2d 432 (1994), a hearing loss case, this Court addressed London. We stated the following:

> [London] does not stand for the principle that loss to a sense organ should be measured by pre-injury and post-injury function. Rather, [London] involved a comparison of pre-injury and post-injury utility. The "practical and common sense" result reached by the Supreme Court in [London] was that where a pre-existing injury to or disability in a sense organ did not materially affect the employee's overall ability to use the organ, no benefit would accrue to the employer for any pre-injury disability to the organ. The [employee] in [London] received

- 5 -

> full compensation for his eye injury even
> though he had poor, but correctable, eyesight
> prior to the injury.

17 Va. App. at 692-93, 440 S.E.2d at 433 (quoting, in part, London, 195 Va. at 818, 80 S.E.2d at 528). Thus, we declined to allow a credit to the employer because the employee's pre-injury hearing loss was not shown to have affected his ability to use his hearing. In so holding, we ruled that Moore's pre-injury condition was not one that implicated "the provision in the Code that relieves an employer from liability for that portion of a compensable injury that pre-existed the employer-employee relationship and the injurious work-related exposure." Id. at 693, 440 S.E.2d at 434. See Code § 65.2-505.

Important also to the resolution of this appeal is our decision in Creative Dimensions Group, Inc. v. Hill, 16 Va. App. 439, 430 S.E.2d 718 (1993), a case not cited by the commission. Citing Owen, we acknowledged in Hill "that the degree of vision loss should be determined without regard to any artificial aid or corrective device." 16 Va. App. at 441, 430 S.E.2d at 720. Indeed, we ruled that "'[t]he Legislature has not required that eye loss be determined on the basis of corrected vision and we have no authority to impose such a requirement.'" Id. at 445, 430 S.E.2d at 722 (citation omitted). The Hill decision relied upon the following general rule:

> "[L]oss of use should be judged on the basis
> of uncorrected vision . . . and that
> therefore loss of use will not be ruled out
> because some correction is achieved. Indeed,
> an award for total blindness in one eye has

> been upheld although use of an optical lens
> had restored a 'substantial function of the
> eye.'"

16 Va. App. at 443, 430 S.E.2d at 721 (quoting 2 Arthur Larson, The Law of Workmen's Compensation, § 58.13(f), at 10-492.140 to .147 (1992) (footnote omitted)).

The evidence proved that prior to the injury Sinclair's vision loss measured a reading of 20/80 on Snellen's Chart. However, his impaired vision did not affect his ability to perform carpentry work until the accident worsened his vision. After the accident, Sinclair's vision loss measured a reading of 20/300 on Snellen's Chart. That reading exceeds the 20/200 fraction contained on the Snellen's Chart of Rule 13, which indicates one hundred percent loss of vision. Although the Snellen's Chart shown in Rule 13 contains no readings in excess of 20/200, the evidence proves that Sinclair's post-injury visual acuity reading is 20/300 on Snellen's Chart. Indeed, the loss of visual acuity in Sinclair's eye attributable to the accident, i.e., the difference between his pre-existing Snellen's Chart reading and his post-injury Snellen's Chart reading is 20/220. That amount exceeds the fraction reading for industrial blindness on the Snellen's Chart contained in Rule 13.

Rule 13 states that "[a]ny other deviation from normal vision caused by the injury shall be considered." By considering Sinclair's post accident vision acuity of 20/300 to be the same as a reading of 20/200 on the Snellen's Chart, the commission

failed to consider the actual deviation from normal vision. Moreover, as in London, Sinclair has been deprived of 20/20 corrected vision as a result of the accident.

We hold, therefore, that by subtracting Sinclair's pre-existing vision acuity reading (20/80) from his post-injury vision acuity reading (20/300), the employer is given the benefit of the provision of Code § 65.2-505 and Sinclair is given the benefit of the deviation from normal vision as required by Rule 13. Accordingly, under a proper application of Rule 13 and Code § 65.2-505, Sinclair's loss of visual acuity resulting from the injury far exceeds the minimum threshold for industrial blindness and entitles him to one hundred percent permanent partial disability. Therefore, we reverse the decision of the commission and remand this case to the commission for an award consistent with this opinion.

Reversed and remanded.