COURT OF APPEALS OF VIRGINIA

Present:  Judges Beales, Powell and Alston
Argued at Richmond, Virginia


VENEZIA TRANSPORT SERVICE, INC. AND
  GRANITE STATE INSURANCE COMPANY

                                              MEMORANDUM OPINION[*] BY
v.      Record No. 2401-09-2                   JUDGE CLEO E. POWELL
                                                    MAY 11, 2010
HAROLD A. LIMING


                  FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

              S. Vernon Priddy III (P. Dawn Bishop; Two Rivers Law Group,
              P.C., on briefs), for appellants.

              Wesley G. Marshall (Law Offices of Wesley G. Marshall, PLC, on
              brief), for appellee.


        Venezia Transport Service and Granite State Insurance Company (collectively,

"employer"), appeal a decision of the Workers' Compensation Commission ("the commission"),

awarding benefits to Harold A. Liming ("Liming").  Employer argues that the Supreme Court of

Virginia's decision in Owen v. Chesapeake Corp., 198 Va. 440, 442, 94 S.E.2d 462, 463 (1956),

which held that a claimant's entitlement to permanent partial disability benefits for vision loss

should be determined based on the degree of loss without any artificial aid or corrective device,

does not require that the assessment be made during the course of surgery to implant an artificial

lens and that no evidence supports the finding that claimant suffered total loss of vision.

Employer further asserts that Creative Dimensions Group, Inc. v. Hill, 16 Va. App. 439, 430

S.E.2d 718 (1993), differs from this case because in Creative Dimensions Group the vision loss

was measured before, not during, surgery and, therefore, does not compel the commission's

_____

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

finding that Liming suffered total loss of vision.[1]  Liming, in response, asks this Court to assess

sanctions against employer based upon his argument that the case was defended without

reasonable grounds.  For the reasons that follow, we affirm the commission's decision and

decline to assess sanctions against employer.

### I.  BACKGROUND

"On appeal, we view the evidence in the light most favorable to the prevailing party

before the commission."  Central Va. Obstetrics & Gynecology Assoc., P.C. v. Whitfield, 42

Va. App. 264, 269, 590 S.E.2d 631, 634 (2004).  "Factual findings by the commission that are

supported by credible evidence are conclusive and binding upon this Court on appeal."  Southern

Iron Works, Inc. v. Wallace, 16 Va. App. 131, 134, 428 S.E.2d 32, 34 (1993).

Harold A. Liming, a tractor trailer truck driver for Venezia Transport Service, Inc.,

suffered a compensable injury in the form of a traumatic cataract to his left eye on July 21, 2005.

Prior to this accident, Liming's vision in both eyes was 20/15, he had never had any problems

with his eyes, and he had never worn corrective lenses.

---

[1] Employer also asserts that medical advances, which it contends are demonstrated in the record, have obviated the concerns about intraocular lens implantation expressed in Creative Dimensions Group and, as such, that the case should be overturnaed.

> We are not at liberty to ignore the decision of a previous panel. Commonwealth v. Burns, 240 Va. 171, 173-74, 395 S.E.2d 456, 457 (1990).  See In re Baskins, 16 Va. App. 241, 245, 430 S.E.2d 555, 558 (1993), judgment reversed by, 247 Va. 506, 442 S.E.2d 636 (1994) ("We are bound by the decision of a prior panel of this Court."); Robinson v. Commonwealth, 13 Va. App. 540, 543, 413 S.E.2d 661, 662 (1992) ("Under the rule of *stare decisis*, a decision by a panel of this court is an established precedent.").

Collins v. Commonwealth, 30 Va. App. 443, 449, 517 S.E.2d 277, 280 (1999).  Therefore, even if the employer were correct as to the medical advances, we will not consider whether Creative Dimensions Group should be overturned.

Liming went to see Dr. Binoy R. Jani on October 18, 2005 to complain of "cloudy vision" and "being bothered by glare" for approximately one month. On October, 25, 2005, Liming's vision in his left eye was 20/40 but his glare acuity was greater than or equal to 20/400. Later, Liming expressed to Dr. Jani that he was having difficulty reading, driving, and focusing. He also stated that he felt off balance.

On March 23, 2006, Dr. Jani performed surgery on Liming's left eye to remove the natural lens and replace it with an artificial lens, in a process known as phacoemulsification with intraocular lens placement. Prior to the surgery, Liming spoke with Dr. Jani about the risks, but felt that he had no options other than to have the operation. At his three-month checkup, Liming complained of occasional discomfort with a burning sensation in his left eye. He also reported that he had a floater in his eye. At that time, Dr. Jani was of the opinion that Liming's condition was stable.

On October 21, 2008, in response to questions posed by counsel for Liming, Dr. Jani agreed that

> As a result of the July 21, 2005 accidental injury and its sequelae, [it was] reasonable and necessary medical treatment for Mr. Liming to undergo intraocular lens implant surgery for his left eye.
>
> During the surgical process, and following the removal of the natural lens in Mr. Liming's left eye, and prior to placement of the prosthetic lens implant, . . . Mr. Liming's vision in his left eye (with regard to the natural parts of his body) [was] worse than 20/200.
>
> With regard to the natural condition of Mr. Liming's left eye, . . . removal of the natural lens [was] permanent.

Following a review of the records, Dr. Geoffrey G. Cooper provided the employer with two reports in April 2009. In his first report, Dr. Cooper explained that in ophthalmology, the standard of "best corrected visual acuity" is based on a person's corrected vision and he found using the preoperative, uncorrected visual acuity to be irrational. He compared it to using a

- 3 -

broken leg, rather than healed leg, as the standard. In his second report, Dr. Cooper addressed the risks associated with cataract extraction, stating:

> [w]hatever "difficulties or future risks" of cataract extraction that existed in 1993 have diminished. Advances in surgery have occurred in a number of ways. The first is that we are using smaller incisions that are self sealing. In my opinion, the risk of injury to the eye from trauma is now no greater than if surgery had never been performed. The second is improvement in intraocular lens design. The lenses create little or no intraocular inflammation, and hence, have no potential for creating glaucoma or accelerated macular problems. Also, the intraocular lenses are UV coated, eliminating UV light exposure as a source for macular injury. The lenses are inert, do not break down with time, and should perform well over a lifetime (there are no moving parts to wear out such as in orthopedic implants).

He further stated

> The only risk beyond the immediate post operative time frame would be the risk of development of a secondary membrane (clouding of the posterior capsule behind the implant). This occurs in approximately 25 to 35 percent of people after cataract surgery, usually within five years. . . . Other late post operative risk such as retinal detachment should be no greater than in these previously traumatized eyes than those in an unoperated cohort.

After considering both medical opinions, the deputy commissioner found that Dr. Jani opined that the surgery was reasonable and necessary. The deputy commissioner also accepted Dr. Jani's opinion that Liming's vision was worse than 20/200 following removal of the natural lens. Based on these factual findings and this Court's decision in Creative Dimensions Group, the deputy commissioner awarded Liming permanent partial disability benefits of $421.95 per week for 100 weeks.

On review, the commission held

> We find that Dr. Cooper's report does not provide sufficient evidence to conclude that the day has arrived to reverse the holding from [Creative Dimensions Group, Inc. v.] Hill. Dr. Cooper opined that future risks have diminished. They have not been eliminated. In fact, the claimant in this matter continued to report discomfort and a burning sensation three months after the

> surgery. We find that the implant is still considered a corrective device and should not be considered in determining the extent of the claimant's loss.

The commission further found that "Dr. Jani was asked the correct question based upon the facts and holding in [Creative Dimensions Group, Inc. v.] Hill. The claimant's vision was worse than 20/200 before the implant and he is entitled to permanent partial disability benefits of 100 weeks."

## II. ANALYSIS

### A. Commission's Award

Here, employer contends that the commission erred in relying on Creative Dimensions Group to find that Liming suffered a total loss of vision because his loss should not have been assessed after removal of his natural lens but before implantation of the artificial lens. In Creative Dimensions Group, 16 Va. App. at 446, 430 S.E.2d at 722, this Court held that an intraocular lens transplant does not eliminate a claimant's vision loss and, "as a mere corrective device, the implant should not be considered in determining the extent of claimant's loss." In that case, the claimant had perfect vision before his industrial accident. Id. at 440, 430 S.E.2d at 719. As a result of his injury, he developed a traumatic cataract and underwent surgery to replace his natural lens with an intraocular lens implant. Id. Claimant's post-injury, but pre-surgery vision was 20/60-1. Id. at 441, 430 S.E.2d at 719. After removal of his natural lens, his vision was less than 20/200. Id. After the operation, claimant's vision improved to 20/40+1. Id. Claimant, however, based his application for permanent, total loss of vision on his visual acuity after removal of his natural lens but before implantation of the intraocular lens, i.e. when his vision was 20/200.[2] Id. The employer argued that claimant should receive permanent partial

---

[2] Employer incorrectly asserts that Creative Dimensions Group differs from this case because there the vision loss was measured before, not during, surgery.

- 5 -

benefits based on visual acuity of either 20/60-1 or 20/40+1.  Id.  This Court rejected this

argument and affirmed claimant's award of permanent, total vision loss benefits.  Id. at 446, 430

S.E.2d at 722.

Creative Dimensions Group cannot be distinguished from this case.  Liming suffered a

compensable injury that required an intraocular lens implant.  His vision loss was based on his

vision after his natural lens was removed but before the artificial lens was implanted.  The

measurement of Liming's post-surgical vision *without* the benefit of prosthesis would be *exactly*

*the same* as it was *after* removal of the natural lens during the surgery.  The removal of the

natural part of the body that afforded Liming any natural sensation and use was total and

permanent.  The vision and sensation that Liming previously experienced with the use of his

natural lens had not been and cannot be restored.  This is precisely what occurred in Creative

Dimensions Group and, therefore, the commission did not err in affirming Liming's award based

on permanent, partial disability for total loss of vision in his left eye.

### B.  Sanctions

Liming contends that employer's request for review and appeal to this Court were

unreasonable and, accordingly, asks this Court to assess the cost of the proceedings against

employer, pursuant to Code § 65.2-713(A).  Code § 65.2-713(A) states, in pertinent part, that

> [i]f the Commission or any court before whom any proceedings are
> brought or defended by the employer or insurer under this title
> shall determine that such proceedings have been brought,
> prosecuted, or defended without reasonable grounds, it may assess
> against the employer or insurer who has so brought, prosecuted, or
> defended them the whole cost of the proceedings, including a
> reasonable attorney's fee, to be fixed by the Commission.

Code § 65.2-713(A) grants this Court the authority to assess against employer the costs of these

proceedings including "a reasonable attorney's fee," if we determine these "proceedings have

been brought, prosecuted, or defended without reasonable grounds."  See Lowes of Short Pump

- 6 -

Virginia v. Campbell, 38 Va. App. 55, 62, 561 S.E.2d 757, 760 (2002) (awarding fees against employer for appealing "without reasonable grounds").

In Lowes of Short Pump Virginia, employer raised a number of issues that were procedurally barred because they were raised for the first time in this Court. Id. at 61-62, 561 S.E.2d at 760. Employer presented this Court with "no meritorious 'ends of justice' or 'good cause' basis" for why this Court should review the barred questions presented. Id. Thus, this Court concluded that employer brought that appeal "without reasonable grounds to support it" and remanded the matter to the commission to assess costs and attorney fees against employer.

Here, the deputy commissioner awarded attorney's fees to Liming. The full commission affirmed the deputy commissioner's opinion without addressing Liming's request that the full commission assess the entire cost of the proceeding to employer. Liming now asks this Court to award the entire cost of the proceedings to employer. Even though employer was unsuccessful on appeal, it cannot be said that the proceeding was "without reasonable grounds" and we decline to remand the matter to the commission to assess costs and attorney's fees where the full commission declined to do so. Moreover, "[t]he decision to assess fees or costs rests in the sound discretion of the commission and will be reversed only for an abuse of that discretion." NiSource, Inc. v. Thomas, 53 Va. App. 692, 721, 674 S.E.2d 581, 596 (2009) (citing Volvo White Truck Corp. v. Hedge, 1 Va. App. 195, 200-01, 336 S.E.2d 903, 906 (1985)). Therefore, we affirm the full commission's decision to affirm the deputy commissioner's award of attorney's fees but also affirm the refusal to further assess costs and attorney's fees as neither was an abuse of discretion.

### III.  CONCLUSION

For the foregoing reasons, we affirm the commission's award.  We further decline to assess sanctions against employer.

Affirmed.