# Richmond

VIRGINIA OAK FLOORING CO., INC., ET AL. v. FLOYD L. CHRISLEY.

March 15, 1954.

Record No. 4203.

Present, All the Justices.

The opinion states the case.

*Gentry & Locke* and *R. E. Mason,* for the appellants.

*Alex M. Harman, Jr., A. Dow Owens* and *Gilmer, Harman & Sadler,* for the appellee.

Hudgins, C.J., delivered the opinion of the court.

On January 13, 1948, Floyd L. Chrisley, hereinafter designated claimant, suffered compensable injuries within the purview of the Workmen's Compensation Act. His most severe injuries were comminuted fractures of the upper third of the femur in each leg. From date of injury to July 24, 1952, a period of fifty-four months, claimant was awarded compensation under section 65-51 for temporary total incapacity, except from March 24, 1950 to June 4, 1950, and from November 6, 1950 to June 15, 1951, when he was paid for ten per cent loss of use of one leg and twenty-five per cent loss of use of the other under section 65-53. On July 16, 1951, claimant was again found to be temporarily totally disabled and was awarded compensation for such disability to begin on June 15, 1951.

On July 24, 1952, the insurance carrier filed a petition seeking a modification of the award. On September 24, 1952, the hearing commissioner in his findings of fact stated that the claimant had sustained twenty-five per cent permanent disability to his left leg and thirty per cent permanent disability to his right leg and suspended the payments for temporary total incapacity and awarded him, under section 65-53 (15), twenty dollars per week for ninety-six and one-quarter weeks, subject to credit for payments theretofore made under the award for ten per cent loss of use of one leg and twenty-five per cent loss of use of the other, but allowed no credit on compensation paid for temporary total incapacity. On review by the full Commission the award of the hearing commissioner was reversed, he dissenting, and

claimant was awarded the maximum compensation provided under section 65-51 for total permanent incapacity. From that award this appeal was allowed.

■ The case was submitted to the Commission on a petition alleging that there had been a change in claimant's condition and praying that the award based on temporary total incapacity be changed to an award based on permanent partial loss of use of the legs. The burden was on the carrier to prove its allegation by a preponderance of the evidence. No verbal testimony was introduced. The evidence was confined to the written statements of six medical experts, none of whom attended the hearing and, hence, none of whom was cross examined. The majority, as well as the dissenting commissioner, based their different findings of fact upon the doctors' statements.

The carrier contends that the evidence proves that claimant has sustained only a permanent partial loss of use of both legs which limits his compensation to that stated in section 65-53 (15). Claimant, on the other hand, contends that the same statements of the doctors clearly prove that he has sustained a total and permanent loss of use of both legs which entitles him to receive the maximum compensation provided in section 65-51.

Commissioner Nuckols in the majority opinion states the history of the case and recites the evidence upon which the Commission's findings of fact are based, the pertinent part of which is as follows:

"After several periods of hospitalization, some necessitated by removal of bone plates and wires, Dr. Roy M. Hoover, the physician who had treated the claimant from the date of his injury, reported under date of March 20, 1950, that there was a permanent disability of 10% of the left leg and 25% of the right. He also advised that there was further general disability, the extent of which should be determined at a later date.

"Whereupon the carrier filed application for hearing upon

the ground of change in condition to determine the extent of the permanent partial loss of use of the legs.

"An award based upon Dr. Hoover's report of March 20, 1950, was entered on May 5, 1950, providing for 61¼ weeks of compensation, beginning March 24, 1950. Commissioner Nickels' opinion contained this language:

" ' . . . it is clearly understood the present award has no bearing upon a future one to be entered which may cover any general partial disability the claimant may have suffered from the original accident.'

"The efficacy of the award was short lived for on June 4, 1950, claimant was again admitted to the hospital for an operation for varicose veins made necessary by the long period of inactivity. Payments on account of the scheduled injury were suspended and payments on account of temporary total disability were resumed on that date. After a healing period payments under the award of May 5, 1950, were resumed on November 6, 1950, by memorandum of agreement.

"Upon a report of Dr. D. S. Divers who performed the surgery and rendered treatment for the circulatory disorders, dated June 15, 1951, stating that his patient was again temporarily totally disabled, payments on that account were resumed on that date and payments under the award of May 5, 1950, again suspended. A memorandum of agreement to this effect was duly entered into and filed. There followed several examinations by specialists in circulatory disorders to determine the best method of treating claimant, the sum total of which was a decision among the physicians that further surgery would probably not benefit their patient. Summing up his opinion Dr. Divers reported on June 30, 1952, as follows:

" 'I may be pessimistic about any permanent improvement in Mr. Chrisley's legs but it appears to me that we have gone to the point where I question whether any further surgery would decrease the permanent disability. I believe if a satisfactory settlement could be made with Mr. Chrisley, on a

permanent disability that the psychological effect might be beneficial to him. I feel that he has a 25% permanent disability to his left leg although this leg does not appear to be as good as the right due to the deformity that was present in his foot before the accident. He has a 30% permanent disability to his right leg which is partially based on the partial ankylosis to the knee.'

"Thereupon the carrier asked for a hearing to determine the percentage loss of use of the legs. Payments for temporary total disability were suspended as of July 24, 1952. Under date of September 5, 1952, Dr. Divers supplemented his report of June 30, 1952, as follows:

" 'This letter is in answer to your request by phone in regard to the overall disability of Mr. Floyd Chrisley. I feel that Mr. Chrisley is not able to hold a job and earn a living but he is probably able to do odd jobs around the house. I feel that 75% overall disability would be a fair estimate.'

"On July 24, 1952, Dr. George S. Bourne, who had examined claimant several times at the carrier's request, reported:

" 'I believe that he may be able to do some very light carpenter work, possibly around his own workshop at home, but this will probably be the extent of his activity.'

"Dr. Fredric Delp in a medical report dated September 6, 1952, reported as follows:

" 'Everybody concerned is familiar with Mr. F. L. Chrisley's history and the severe fractures he sustained. Since I have seen him he has had strippings and ligations of varicose veins in both legs. At the present time he has marked limitation of hip motion on the right and limitation of flexion of rt. knee. The same is true of the left hip and knee but to a somewhat lesser degree. The rt. femur is still plated. There is marked impairment of circulation in both lower extremities with ulceration of the left leg. There have been ulcers on the rt. leg.

" 'As a whole I consider Mr. Chrisley totally disabled for

any kind of work that would require being on his feet, a situation that is most likely to be permanent. It is possible that in the future he might engage in some light sitting down work, but his training and abilities are not of that nature. I sincerely doubt that Mr. Chrisley will ever be able to return to any work that he is fitted for and be able to support himself at any gainful employment.'

"Dr. L. Perry Hyde in a medical report dated September 8, 1952, has the following to say:

" 'After a physical examination of Floyd Chrisley on September 8, 1952—There is 75% disability of right hip and 55% disability of left thigh. This man is unable to fulfill any of the requirements necessary for physical work.'

"At the hearing the matter was submitted upon the medical reports. The hearing commissioner awarded compensation under section 65-53, based upon the estimates of Dr. Divers in his report of June 30, 1952, for 96¼ weeks subject to credit for sums theretofore paid under the award of May 5, 1950. This award is before us for review upon application of the claimant who contends that his incapacity for work resulting from his injury is total and that he should be compensated according to the provisions of section 65-51, Code of 1950."

The dissenting commissioner based his findings of fact upon that part of the statement of Dr. Divers of June 30, 1952, in which he said: " . . . I feel that he has a 25% permanent disability to his left leg . . . " and "a 30% permanent disability to his right leg . . .", in which conclusion Dr. Hoover concurred in the following language: " . . . I believe Dr. Divers' estimate should be relied upon, since he has undoubtedly taken both conditions into consideration." The dissenting commissioner disregarded all other testimony tending to show that claimant was totally disabled on the theory that such evidence was not pertinent under section 65-53 in determining the extent of claimant's loss of use of legs.

An employee who is injured in an industrial accident may

be compensated under three sections of the Code. Under section 65-51 he may be compensated for total incapacity for work during the period of such total incapacity, with certain stated limitations. If it develops that the total incapacity is only temporary, then the employee, in addition, is entitled to compensation for permanent partial incapacity for work based on the difference between the average weekly wage he was earning before and the average weekly wage he was able to earn after the injury, as provided in section 65-52. If, however, it is finally determined that the injury results in the loss or loss of use of a member, the injured employee is entitled to additional compensation which is arbitrarily fixed by the provisions of section 65-53. The benefits under this section are not based upon the loss of earning ability, but are regarded as an indemnity for the loss or loss of use of a member of the body. *Crawford* v. *Virginia Iron, Coal & Coke Co.*, 136 Va. 266, 118 S. E. 229; *Gobble* v. *Clinch Valley Lumber Co.*, 141 Va. 303, 127 S. E. 175; *McCarrell* v. *Harrisonburg Telephone Co.*, 163 Va. 272, 172 S. E. 241; *Noblin* v. *Randolph Corp.*, 180 Va. 345, 23 S. E. (2d) 209; *Walsh Construction Co., et al.* v. *London,* this day decided. *Nicely* v. *Virginia Electric & Power Co.* and *Foust Coal Co., etc.* v. *Messer,* this day decided.

However, it is to be noted that subsection (18) of section 65-53 provides that the loss of any two members in the same accident constitutes a total and permanent incapacity "to be compensated according to the provisions of section 65-51." The section further provides that the permanent loss of use shall be equivalent to the loss of a member, and that for permanent partial loss or loss of use of a member compensation may be proportionately awarded.

It is conceded that claimant in the same accident sustained severe injuries to both legs. The legs were not lost in the sense that they were severed from the body, but for the total loss of use of both legs claimant is entitled to the same compensation as if they had been severed. The vital ques-

tion to be determined from the evidence is whether the "loss of use" of both members was total or partial. The same doctors, who stated that claimant had lost only a small percentage of use of his legs, stated that he was not able to hold a job and earn a living but "he is probably able to do odd jobs around the house."

The question of law presented is whether, in determining the extent of the loss of use of two members injured in the same accident, the ability of the injured employee to engage in gainful employment is a proper element for consideration. We think it is.

The phrases "total and permanent loss" or "loss of use" of a leg do not mean that the leg is immovable or that it cannot be used in walking around the house, or even around the block. They do mean that the injured employee is unable to use it in any substantial degree in any gainful employment. This is the fair and reasonable interpretation which has been placed upon the phrase "total and permanent disability", as used in accident insurance policies. We said in *Atlantic Life Ins. Co.* v. *Worley*, 161 Va. 951, 960, 172 S. E. 168, in which that expression was used in the insurance policy: " . . . that the disability contemplated by the policy did not mean a state of absolute helplessness, but meant the inability to do substantially all of the material acts necessary to the prosecution of any occupation for remuneration or profit in substantially the customary and usual manner in which such occupation is prosecuted."

In *Grammici* v. *Zinn*, 219 N. Y. 322, 325, 114 N. E. 397, it was said: " . . . The expressions, 'loss' and 'loss of use,' as used in the law, should be given their unrestricted and ordinary meaning. In the case at bar, the hand, or the use of it, was not lost, provided it could fulfill, in a degree fair and worth considering, in any employment for which the claimant was physically and mentally fitted or adaptive, its normal and natural functions. In case the hand was destroyed by amputation, directly or indirectly caused by the injuries, to such an extent that it could not thus fulfill its

natural functions, it was, within the purview of the law, lost. . . . While the loss of a hand necessarily involves the loss of the use of it, the loss of the use of a hand does not involve the actual loss of the hand as a physical member—a distinction the law recognizes and observes. . . . "

In *Traders & General Ins. Co.* v. *Maxwell* (Tex. Civ. App.), 142 S. W. (2d) 685, 690, it was held: "The fact that the claimant may perform work not requiring use of his leg, such as firing a boiler in the manner here testified to, and that he can walk without use of cane, crutch or brace, when to do so causes him pain, swelling, inflammation, and further weakening of the knee, of which condition it is testified there is no chance of improvement, does not, as contended, show as a matter of law that he has not suffered permanent total loss of the use of the leg. . . " *Modra* v. *Little*, 223 N. Y. 452, 119 N. E. 853; *New York Indemnity Co.* v. *Industrial Commission*, 86 Colo. 364, 281 Pac. 740; *Consolidation Coal Co.* v. *Crislip*, 217 Ky. 371, 377, 289 S. W. 270; *Kinyon* v. *Kinyon*, 230 Mo. App. 623, 71 S. W. (2d) 78.

The decision in *Morris* v. *Pulaski Veneer Corp.*, 183 Va. 748, 33 S. E. (2d) 190, is in line with the foregoing authorities. The facts were that Morris, while working for the same employer, sustained compensable injuries in two separate and distinct accidents. In the first he lost his left hand by severance above the wrist. In the second accident nine years later he lost four fingers and a portion of the palm of his right hand. He was paid compensation for the loss of his left hand under the provisions of section 65-53. The Commission, in passing upon the amount of compensation for injuries sustained in the second accident, held that he was not entitled to compensation for the total permanent loss of use of both hands and that, in determining the extent of the loss of use, the ability of Morris to engage in gainful occupation should not be considered. This view was rejected on appeal and we held in line with the authorities therein cited that, in determining the extent of the loss of

use of two members, the inability of the injured employee to engage in gainful employment was a proper element to be considered. In stating the facts in the case we said:

" . . . In this case the only evidence is that introduced by the claimant. It consists of his own testimony and that of his physician.

"He testified that he is not capable of doing anything; that he is not able to dress himself; that he has to be aided in feeding himself; that he cannot dial a telephone; that he has only done manual labor and is not capable of doing anything else.

"The physician testified that 'he is totally disabled because he is a manual laborer and has to work with his hands. He does not have one hand and the other hand is gone now. He lost one and has now lost the other all except the thumb. . . . I would say his right hand is useless for normal work.

" 'This man cannot go out and obtain a job at any other plant.'

"Despite this the Commission found that his disability was only partial.

"(5) We hold that the award is an illegal one because it is not supported by evidence."

The carrier contends the decision in this case is controlled by the decision in *McCarrell* v. *Harrisonburg Telephone Co.*, 163 Va. 272, 172 S. E. 241. The facts in the two cases are distinguishable. Neither the facts nor the questions of law presented are the same. In the *McCarrell* case the extent of the loss of use of each foot was conceded to be only fifty per cent. The question presented was whether compensation should be computed for permanent partial incapacity under what is now section 65-52, or under what is now section 65-53. It was held that inasmuch as there was no dispute about the extent of the loss of use, the computation should be made under section 65-53. The vital question in the case now under consideration was not considered in the *McCarrell* case.

Our conclusion is that in determining the extent of the

loss of use of a member the capacity or incapacity of claimant to engage in gainful employment is a proper element for consideration. If only one member is involved compensation is computed under section 65-53. If two members are injured in the same accident and it is proven that there is total and permanent loss or loss of use of both members resulting therefrom, compensation is computed under section 65-51. This reasonable and fair construction of the pertinent statutes is in accord with the decisions this day announced in *Foust Coal Co., etc.* v. *Messer, Nicely* v. *Virginia Electric & Power Co.*, and *Walsh Construction Co., et al.* v. *London*, all of which tend to make effective the humane purpose of the Workmen's Compensation Act.

The award of the Commission is affirmed.

*Affirmed.*