HARLENE H. BARNETT

v.

D. L. BROMWELL, INC., et al.

No. 1033-86

Decided August 4, 1987

COUNSEL

Michael W. Heaviside (Ashcraft & Gerel, on brief), for appellant.

Benjamin J. Trichilo (Lewis, Tydings, Bryan & Trichilo, on brief), for appellees.

OPINION

**HODGES, J.** — The question raised in this appeal is whether the Industrial Commission erred in denying the appellant, Harlene H. Barnett, total and permanent benefits for a work related injury to the brain that rendered her permanently unemployable. Mrs. Barnett's application was filed under the provisions of Code § 65.1-56(18). The commission held that because her evidence failed to prove that the injury resulted in "incurable imbecility or insanity" an award should be denied. We affirm.

The facts are not in dispute. At the time of Mrs. Barnett's injury on March 3, 1980, she was employed as a part-time sales person of fireplaces and fireplace equipment. She was knocked unconscious for about three hours when struck on the head by a fireplace door and was hospitalized. Her injury was diagnosed by Dr. Charles Carroll, a neurosurgeon, as cerebral concussion, subarchnoid hemorrhage, chin laceration and left cheek contusion. Mrs. Barnett was discharged from the hospital on March 12, 1980, and continued under the care of Dr. Carroll. At the time of her discharge she was feeling much better, was coherent and ambulating by herself; however, within a week she began having difficulty expressing herself and had trouble remembering words.

Mrs. Barnett's condition continued to deteriorate and on October 7, 1980, based on a memorandum of agreement entered into by the parties, she began receiving temporary total disability benefits.

On December 30, 1985, she filed for total and permanent disability under Code § 65.1-56(18) which provides:

> The loss of both hands, both arms, both feet, both legs or both eyes or any two thereof, in the same accident, or an injury for all practical purposes resulting in total paralysis as

determined by the Commission based on medical evidence, or *an injury to the brain resulting in incurable imbecility or insanity*, shall constitute total and permanent incapacity, to be compensated according to the provisions of § 65.1-54.

(emphasis added).

Between the date of injury and the hearing before the commission, Mrs. Barnett was examined and treated by a number of doctors including neurosurgeons, a neurologist, a neuropsychologist, and a psychiatrist. The physicians' diagnoses were that she suffered aphasia, dyslexia and dysgraphia which affected her ability to speak, read and write. A speech therapist who worked with her for one and one-half years reported that her reading, writing and calculation abilities were so affected that she could not function in business.

Both a neuropsychologist, who performed tests to determine her I.Q., and a psychiatrist testified that medical classification of idiots, imbeciles and morons was obsolete and had not been used in diagnosing mental disorders for approximately twenty-five years. They agreed that the term imbecile, when used, characterized someone with an I.Q. between 25 and 49. The tests indicated that the appellant's I.Q. was 85 in 1982 and 96 in 1985. No evidence was presented to support a finding that Mrs. Barnett was an "incurable imbecil[e]" and she made no contention that she was insane.

After considering the evidence, the Industrial Commission in its August 15, 1986 opinion said: "[T]he degree of reduction of her mental capacities renders her permanently unemployable. We so find." This finding is not in dispute and we agree that there was sufficient credible evidence to support this conclusion. Mrs. Barnett's claim for benefits was denied, however, because she failed to establish that her injury resulted in "incurable imbecility or insanity."

The appellant argues that the proper legal standard should not be whether her injury caused her to be an "incurable imbecil[e]" but whether the injury left her unable to engage in gainful employment. In support of her position, she cites *Virginia Oak Flooring Co. v. Chrisley*, 195 Va. 850, 80 S.E.2d 537 (1954). In *Chrisley* the claimant sustained injuries to both legs. His physician

opined that he could not hold a job and earn a living but could probably do odd jobs around the house. His overall disability was rated at 75 percent. The court affirmed the Industrial Commission's finding that this constituted total and permanent incapacity. The court said: "The legs were not lost in the sense that they were severed from the body, but for the total loss of use of both legs claimant is entitled to the same compensation as if they had been severed." *Id.* at 856, 80 S.E.2d at 541. The court also held that the ability of the injured employee to engage in gainful employment was a proper consideration. *Id.* at 857, 80 S.E.2d at 541.

*Chrisley*, however, is distinguishable from the case at bar. In *Chrisley* the court held that loss of use of claimant's legs in his employment constituted for all practical purposes permanent incapacity. The statute covers "loss" of hands, legs, arms, feet and eyes. In *Chrisley*, the court was called upon to determine the meaning of the term "loss" and found that it was not limited to actual severance of the limb in question. However, in this case the language in the statute defining compensable brain injury is unambiguous. This court cannot construct a new definition for the statutory terms when the terms selected by the General Assembly are unambiguous. The portion of the statute dealing with brain injury does not describe loss of brain function; instead, it covers "[a]n injury to the brain resulting in incurable imbecility or insanity . . . ." Imbecility is a medical term and well defined. Even though the term may not have been used in the medical profession for twenty-five years, the General Assembly of Virginia saw fit to insert it in the law in 1970 by amendment.

While we agree that Mrs. Barnett suffered a totally disabling injury to the brain which rendered her unemployable, we conclude that the Industrial Commission was correct in holding that it was bound by the specific language used by the legislature in Code § 65.1-56(18).

> If the language of a statute is plain and unambiguous and its meaning perfectly clear and definite, effect must be given to it regardless of what courts think of its wisdom or policy. In such cases courts must find the meaning within the statute itself.

*Temple v. City of Petersburg*, 182 Va. 418, 423, 29 S.E.2d 357, 358 (1944).

Our duty is to interpret the law, not enact it. We are not permitted to rewrite statutes. Amendment to the law is a function reserved to the legislature. We cannot write new words into a statute but must interpret them as written. The argument that the term imbecile is outmoded or that the act should cover any brain injury resulting permanent incapacity should be made to the General Assembly, not this Court.

For the foregoing reasons, the decision of the Industrial Commission is affirmed.

*Affirmed.*

Duff, J., concurred.

Koontz, C.J., dissenting.

I respectfully dissent from the majority in this case.

The commission found that Mrs. Barnett suffered permanent irreversible brain damage which rendered her permanently unemployable and the majority agrees that this finding is clearly supported by the record. The majority then holds that Code § 65.1-56(18), which provides in pertinent part: "an injury to the brain resulting in incurable imbecility . . . shall constitute total and permanent incapacity . . ." is unambiguous and refers to one with an I.Q. between 25 and 49.

"Imbecility" is not defined in the statute. Its clear meaning, somehow derived from the medical evidence, is that while this term is used in the medical profession, has not been used for twenty to twenty-five years, is of historic interest only, when it was used in the medical profession, it characterized one with an I.Q. between 25 and 49. The reasoning then goes that because Mrs. Barnett's I.Q. did not fall within this precise range, she is to be denied compensation because her brain injury does not meet the statutory definition of compensable brain injury. This patently unfair result is reached by what the majority perceives as interpreting the unambiguous language of the statute and carefully declining to "rewrite" it. I agree that where "the language of the statute is plain and unambiguous and its meaning perfectly clear and definite, effect must be given to it regardless of what courts think of its wisdom or policy." *Temple v. City of Petersburg*, 182 Va. at 423, 29 S.E.2d at 358. Such is simply not the case here.

I believe the term "incurable imbecility" is ambiguous and accordingly we must look to the legislative intent in the use of that term. I believe that intent is found in the humane purpose of the entire Workers' Compensation Act and the legislative history of this particular section.

The 1969 Report of the Virginia Advisory Legislative Council to the Governor and the General Assembly of Virginia contained the following: "We are recommending that the limitation on the duration of medical benefits be removed in the case of injury to the brain or spinal cord." A 1970 amendment to the legislation carrying out this recommendation inserted the language "an injury to the brain resulting in incurable imbecility." (Journal of the Senate, page 1039, March 1970). It seems clear that the intent of this amendment was to remove the durational limitations for compensable brain injuries which are so severe and irreversible as to be the functional equivalent of one permanently unemployable such as the commonly accepted limitations of an "imbecile."

The medical experts in this case agree that historically one characterized with an I.Q. of 0 to 19 was classified an "idiot." Partly because one falling so low on the I.Q. testing scale would be so limited that the accuracy of the test itself would necessarily come into question, the medical experts also agree that currently one receiving an I.Q. score of below 69 is merely now classified as mentally retarded. Nevertheless, if the reasoning of the majority is followed to its logical conclusion, had Mrs. Barnett's I.Q. score fallen below 25 or within the historic classification of an "idiot," she would not fit into the required definition of an "imbecile" and be denied compensation. I cannot attribute such an unreasonable result to an intent of the legislature.

Finally, I do not agree with the distinction the majority finds between this case and *Chrisley*. The *Chrisley* Court took a functional approach in construing the statute and found that a "loss of both legs" was equivalent to the loss of *use* of both legs. *Chrisley*, 195 Va. at 856, 80 S.E.2d at 541. The Court also held that the ability of the injured employee to engage in gainful employment is a proper consideration in this determination. *Id.* at 857, 860, 80 S.E.2d at 541. I would apply such a functional standard in this case and find that Mrs. Barnett is entitled to be compensated without limitation according to Code § 65.1-54 because she suffered permanent irreversible brain injury which resulted in her be-

ing permanently unemployable in any meaningful gainful employment.

In so doing, I would avoid the necessity of requiring that Mrs. Barnett be compensated only if she could establish that she had been rendered an "imbecile" based on an outdated medical standard covered with the dust of disuse over the past twenty to twenty-five years and continue the well established humane purposes of the Act I think intended by our legislature.