MISTER KLEEN MAINTENANCE

COMPANY, INC. et al.

v.

ERNEST ELMER CLARK

Nos. 2138-92-4,
2241-92-4

Decided December 14, 1993

COUNSEL

William C. Walker (Taylor & Walker, on brief), for appellant/cross-appellee.

Stephen W. Robinson (McGuire, Woods, Battle & Boothe, on brief), for appellee/cross-appellant.

OPINION

**KOONTZ, J.**—Mister Kleen Maintenance Company, Inc. (Mister Kleen) and its insurer appeal from an award by the Worker's Compensation Commission (the commission) of permanent and total disability benefits to Ernest Elmer Clark (Clark) pursuant to Code § 65.1-56(18), in effect in 1985. Clark cross-appeals on various collateral issues arising out of the commission's findings, chiefly the determination that Clark "is not entitled to a conclusive presumption of permanent total disability in that his physical and mental condition may improve." Finding our decision in *Barnett v. D.L. Bromwell, Inc.,* 6 Va. App. 30, 366 S.E.2d 271 (1988) (en banc), dispositive to the main issues presented in these appeals, we affirm the findings of the commission in part, reverse in part, and remand the case to the commission for final action.

On January 25, 1985, doctors diagnosed Clark as suffering from cryptococcal meningitis caused by massive exposure to a fungus found in dried pigeon droppings. The parties do not dispute that Clark contracted the disease in the course of his employment. Clark received temporary total disability benefits beginning February 4, 1985. A deputy commissioner approved Clark's November 27, 1991 application for permanent total disability benefits. On review, the commission affirmed the finding of permanent total disability, but the commission also found that Clark's condition might improve, rendering him ineligible for a conclusive finding of permanent total disability.

The medical evidence shows that as a result of brain damage Clark suffers short-term and long-term memory loss, depression, suicidal ideation, fatigue and that he has unexplained, sometimes violent, outbursts. Numerous medical experts have stated that Clark's level of mental ability would never improve to the point that he could actively pursue gainful employment. Only Dr. Ignacio Rodriguez opined that Clark might perform some form of manual labor that did not require operating heavy machinery or climbing at unprotected heights. Dr.

Rodriguez's evaluation of Clark's condition and its etiology varied markedly from that of the other physicians.

At the time of Clark's initial disability claim, Code § 65.1-56(18) provided in pertinent part:

> [A]n injury to the brain resulting in incurable imbecility or insanity, shall constitute total and permanent incapacity, to be compensated according to the provisions of § 65.1-54.

In *Barnett,* the claimant suffered severe brain damage as a result of a head injury. The commission initially declined to award permanent total disability, reasoning that the claimant, though no longer employable, did not meet the technical definition of the outdated term "imbecility." We disagreed.

> [T]he legislature intended a non-technical meaning of the term imbecility which is consistent with the functional approach of [*Virginia Oak Flooring Co. v. Chrisley,* 195 Va. 850, 80 S.E.2d 537 (1954)] and the humane purposes of the Act. In that context an irreversible brain injury which renders the employee *permanently unemployable* and so affects the non-vocational quality of his life by eliminating his ability to engage in a range of usual cognitive processes is the functional equivalent, and meets the intended statutory definition, of incurable imbecility contemplated by Code § 65.1-56(18) and is compensable pursuant to Code § 65.1-54.

*Barnett,* 6 Va. App. at 36, 366 S.E.2d at 274 (emphasis added).

The facts of the present case clearly fall within the definition set out in *Barnett.* The effects of meningitis have rendered Clark permanently unemployable. Contrary to assertions made by the employer, the record contains ample evidence of irreversible and severe limitations and reductions of the non-vocational quality of Clark's life, eliminating his ability to engage in many usual cognitive processes.[1] While the record may contain a limited amount of conflicting medical testimony, the resolution of that conflict rests firmly with the commission and we will not disturb its finding on appeal. *Penley v. Island Creek Coal Co.,* 8 Va. App. 310, 318, 381 S.E.2d 231, 236 (1989).

---

[1] For example, the record reflects that Clark is unable to "engage in recreational activities such as fishing. He cannot remember to take his prescription medication and from time to time forgets to read reminder notes as to medication." He is not able to recall a telephone call within moments after completing it.

Accordingly, we affirm the decision of the commission to award permanent total disability pursuant to the provisions of Code § 65.1-54.

█ We now turn to the issues raised by the claimant's cross-appeal. Clark first contends that the commission erred in not finding that his condition gives him a conclusive presumption of permanent disability. The provisions of Code § 65.1-54, in effect on the date of Clark's initial claim, provide for lifetime benefits without limit as to the total amount for permanent total incapacity as defined by Code § 65.1-56(18), in clear distinction from other types of permanent impairment. *Barnett,* 6 Va. App. at 36, 366 S.E.2d at 274. Code §§ 65.1-54 and 65.1-56(18) read together can admit no other interpretation than that the legislature intended a determination of incapacity under Code § 65.1-56(18) to raise a conclusive presumption of eligibility for benefits under Code § 65.1-54. *See Barnett,* 6 Va. App. at 36-37, 366 S.E.2d at 274. Accordingly, we reverse the commission's finding that Clark should not receive the benefit of a conclusive presumption of permanent total disability.

█ Lastly, Clark raises two issues relating to the reduction of attorney's fees by the commission and the commission's decision not to assess the burden of that award to the employer and insurer. Because the award and assessment of attorney's fees rest within the sound discretion of the commission, we will not disturb these findings absent a showing of abuse of that discretion. *Jensen Press v. Ale,* 1 Va. App. 153, 159, 336 S.E.2d 522, 525-26 (1985). Finding none here, we affirm the ruling of the commission.

For the reasons stated above, the decision of the commission is affirmed in all respects except as to the determination of the conclusive presumption of permanent total disability. On this issue, the finding of the commission is reversed and the case remanded to the commission for final action consistent with this opinion.

*Affirmed in part,*
*reversed in part,*
*and remanded.*

Barrow, J., concurred.

Coleman, J., dissenting.

In my opinion, the evidence is insufficient to support the commission's finding that Clark comes within the *Barnett* definition of an

"imbecile" entitling him to lifetime benefits under former Code §§ 65.1-56(18) and 65.1-54. In the *Barnett* case, we stated, "an irreversible brain injury *which renders the employee permanently unemployable and so affects the non-vocational quality of his life by eliminating his ability to engage in a range of usual cognitive processes* is the functional equivalent . . . of incurable imbecility." 6 Va. App. at 36, 366 S.E.2d at 274 (emphasis added). The majority's holding that "the facts of the present case clearly fall within the definition set out in *Barnett*" is incorrect, in my opinion. Therefore, I respectfully dissent.

Under the *Barnett* definition for "incurable imbecility," an employee's injury must not only render him unemployable, but must also affect the quality of his life by "eliminating" his ability to use his "usual cognitive processes." *Id.* "Cognition" is defined as "an intellectual process by which knowledge is gained about perceptions or ideas; distinguished from affection and conation." *Webster's Third New International Dictionary* 440 (3d ed. 1981). "Affection" in the psychological sense is defined as "the feeling aspect of consciousness." *Id.* at 35. "Conation" is "the conscious drive to perform apparently volitional acts." *Id.* at 468. Simply put, cognition involves thinking. Affection involves emotion, and conation involves instinctive volitional acts. In the *Barnett* case, Mrs. Barnett's quality of life was essentially "eliminat[ed]" by her lack of "cognitive" ability. She did not have basic cognitive skills, such as the ability to speak, write, read with understanding or follow instructions, that are critical to a person's quality of life. *Id.* at 32-33, 366 S.E.2d at 272. While Mrs. Barnett's situation may have been to the extreme and may not be representative of the threshold standard for a compensable brain injury, nevertheless, the quality of the person's life must be so diminished by the elimination of one's ability to engage in usual cognitive functions that one is rendered the equivalent of an incurable imbecile.

The mental and psychological deficits afflicting Mr. Clark are very different from a mental defect affecting a person's ability to reason and understand. Mr. Clark suffers from "memory loss, depression, suicidal ideation, fatigue and . . . has violent outbursts." His injury does not "affect[] the non-vocational quality of his life by *eliminating* his ability to engage in a range of usual cognitive processes" so as to render him the functional equivalent of an incurable imbecile. *Barnett,* 6 Va. App. at 36, 366 S.E.2d at 274 (emphasis added). Although he suffers severe mental and psychological problems, Mr. Clark possesses a variety of mental functions and skills. While some of his residual

skills might arguably be marketable, certainly Clark's injury has not "eliminat[ed] his ability to engage in a range of usual cognitive processes." *Id.* He is able to drive his car, and he possesses a valid operator's license. He remembers the names and location of all of his doctors. He has memorized his own telephone number and area code. He remembers his own birthday and that of his wife. He is aware of his surroundings and understands the events that occur around him. He has the ability to read and understand the newspaper and is able to watch television. While Mr. Clark's abilities are limited, they belie the majority's conclusion that he is the equivalent of an "incurable imbecile" as defined by Code § 65.1-56(18).

I am not unsympathetic to the severity of Mr. Clark's injury and his inability to control his depression and the fact that he has violent outbursts and suicidal tendencies. Nevertheless, his mental and emotional problems do not come within the purview of Code § 65.1-56(18) as defined by *Barnett.* The legislature did not intend by virtue of Code § 65.1-56(18) to compensate an employee for life who receives a serious brain injury, except when the injury is so severe as to render the employee the equivalent of an incurable imbecile. The mere fact that the commission entered an award which could be modified if and when Clark's condition improved recognized that his condition was not that of an "incurable imbecile." For these reasons, I disagree with the majority that Mr. Clark's condition fits within the definition of his being an "incurable imbecile" under Code § 65.1-56(18). I would reverse the commission and dismiss the claim.