COURT OF APPEALS OF VIRGINIA


Present:  Judges Benton, Humphreys and Senior Judge Overton


MARGARET ELAINE INGO

                                        MEMORANDUM OPINION*
v.    Record No. 0835-02-3                  PER CURIAM
                                         SEPTEMBER 17, 2002
MORTON POWDER COATINGS AND
 SEDGWICK OF THE CAROLINAS


          FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

              (Deborah W. Dobbins; Kendall O. Clay; Gilmer,
              Sadler, Ingram, Sutherland & Hutton, on
              briefs), for appellant.

              (Kathryn Spruill Lingle; Theisen & Lingle,
              P.C., on brief), for appellees.


     Margaret Elaine Ingo contends the Workers' Compensation

Commission erred by applying an improper standard when

determining whether she has reached maximum medical improvement

and further erred in finding that she had not reached maximum

medical improvement.  Pursuant to Rule 5A:21, Morton Powder

Coatings, her employer, raises the additional issue whether the

commission erred in retaining jurisdiction over Ingo's claim.

Upon reviewing the record and the parties' briefs, we conclude

that this appeal is without merit.  Accordingly, we summarily

affirm the commission's decision.  Rule 5A:27.

_____

     * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

On appeal, we view the evidence in the light most favorable to the prevailing party below. R.G. Moore Bldg. Corp. v. Mullins, 10 Va. App. 211, 212, 390 S.E.2d 788, 788 (1990). So viewed, the evidence proved Ingo injured her right shoulder when she slipped and fell on ice. Pursuant to Memoranda of Agreements, the commission entered awards granting Ingo compensation benefits for various periods between August 1, 1990 and April 21, 1991, and for the period beginning April 21, 1991 and continuing. Ingo has not worked since April 1991 and has undergone extensive medical treatment rendered by numerous physicians. On April 19, 2000, Ingo filed a change-in-condition application seeking permanent and total disability benefits.

## I. Maximum Medical Improvement

Dr. Marc A. Swanson, a pain management specialist, has been Ingo's treating physician for the past several years and has treated Ingo for reflex sympathetic dystrophy. During these treatments for injury to her right shoulder, Ingo began having pain and symptoms in her left arm and face, as well as her right arm. On November 4, 1999, Dr. Swanson opined that Ingo's "right arm present disability and limitations preclude using her right arm" and indicated he is "not sure to what degree she will get functional recovery of her left arm, in that we have only been treating it aggressively over the last several months." Dr. Swanson also noted that Ingo's left arm and face pain are "a sequela of her initial injury and her long-term right upper

-

extremity functional disability . . . [, that Ingo's] loss is partial and that there is hope that she will be able to use her left arm for productive purposes."

A month later, Dr. Swanson summarized Ingo's condition as follows:

> I believe her sympathetic dystrophy symptoms, though improved, are going to be permanent. I believe the loss is a partial one in that she has some use of her hands, that hopefully can regain and maintain some distal upper extremity function, improving that on her left to the level that she currently has on her right. It may be, however, because of her shoulder range of motion and functional disabilities that she will have a right total incapacity of both arms as a result of her industrial accident.

Dr. Swanson opined on January 18, 2000 that Ingo was "100% disabled." At that time, he reported that Ingo suffers from long-standing right upper extremity pain and that her left upper extremity had not responded well to therapeutic intervention. He noted that Ingo's "pain control remains essentially unchanged," that she had "marked functional disability presently," that she could not "enter a workforce," and that "her self care abilities are markedly impaired." Dr. Swanson also noted that Ingo "will potentially benefit from more interventional therapies pending consultation and advice by a specialist with greater experience in her syndrome."

In a March 1, 2000 letter, Dr. Swanson explained that Ingo's "left upper extremity continues to fail to respond to

-

therapeutic interventions and she has more persistent distal motor tone abnormalities and marked loss of distal function." He also indicated that "[h]er disability is 100% . . . because she has lost use of both upper extremities."

Upon referral by Dr. Swanson, Ingo consulted Dr. Timothy R. Deer concerning other pain management techniques. In his May 15, 2000 letter to Dr. Swanson, Dr. Deer opined that Ingo suffers from "a complex regional pain syndrome type I on both upper extremities, markedly worse on the right side." Dr. Deer noted that Ingo had undergone continuous epidurals, which "was helpful, and therefore, she most likely would do well with an intrathecal pump." Dr. Deer also noted that due to the location of Ingo's pain, which was mostly in her arms and shoulders, he would recommend that she consider undergoing a spinal cord stimulation trial before placement of an intrathecal pump. Dr. Deer recommended that Dr. Swanson consider those treatment options.

In denying Ingo's application, the commission ruled that "while the evidence indicates that [Ingo] has a permanent impairment, it fails to conclusively establish that [she] has reached maximum medical improvement." The commission also ruled that the evidence "failed to establish a rating to each member as required by the Act." In so ruling, the commission found as follows:

-

In view of the fact that [Ingo] was under active treatment, that there was potential for the intrathecal pump and nerve stimulator to improve [Ingo's] symptoms, and in the absence of any definitive statement from Dr. Swanson either before or after the evaluation by Dr. Deer concerning whether [Ingo] has in fact reached maximum medical improvement, we cannot find that [Ingo] has met her burden of establishing maximum medical improvement.  The medical evidence leads us to believe that [Ingo] may potentially obtain further functional improvement from medical treatment.

Moreover, [Ingo] has, at this time, failed to establish a rating to each member as required by the Act.  In this case, [Ingo] had the burden of providing a ratable loss of function in both upper extremities. Dr. Swanson, the only physician to address this issue, has even upon a request for clarification from [Ingo] simply stated that her "disability is 100% . . . because she has lost the use of both upper extremities." He also noted that her pain medication and other complications from her protracted disability compounded her mechanical limitations because of the upper extremity impairment.  In his January 2000 report, the doctor noted additional factors including progressive side effects such as depression or other significant psychiatric difficulties that "will contribute further to her disability."

Although Dr. Swanson considers [Ingo] 100% disabled, he has not specified a rating for each member as required by the Act. Even if we were to find the doctor provided a 100% to each extremity, we cannot determine from the evidence presented how such a determination was reached and whether the disability was based solely on functional loss of use or other considerations such as medication or psychiatric issues.

-

Code § 65.2-503(C)(1) provides compensation for permanent and total incapacity when there is "[l]oss of both hands, both arms, both feet, both legs, both eyes, or any two thereof in the same accident."  Furthermore, Code § 65.2-503(D) provides that "the permanent loss of the use of a member shall be equivalent to the loss of such member, and for the permanent partial loss or loss of use of a member, compensation may be proportionately awarded."  To meet her burden of proof, Ingo was required to prove that she is unable to use her permanently impaired members in gainful employment.  See Virginia Oak Flooring Co. v. Chrisley, 195 Va. 850, 857, 80 S.E.2d 537, 541 (1954).  In addition, Ingo was required to "establish that [she] has achieved maximum medical improvement and . . . [her] functional loss of capacity [must] be quantified or rated."  Cafaro Constr. Co. v. Strother, 15 Va. App. 656, 661, 426 S.E.2d 489, 492 (1993).

The commission applied these principles in reviewing the evidence and explicitly made findings consistent with the standards required by the statute and the case law. Accordingly, we hold that Ingo's contention that the commission applied an inappropriate standard is meritless.

Furthermore, the medical records of Drs. Swanson and Deer support the commission's finding that alternative therapies and treatments, which are currently under consideration for Ingo, could potentially improve her symptoms and functional capacity.

-

Indeed, as late as January 2000, Dr. Swanson opined that Ingo might benefit from additional interventional therapies. Dr. Swanson's reports contain no indication that Ingo has reached maximum medical improvement.

In addition, the record contains no evidence from any physician assigning a specific rating of the functional loss of use of either of Ingo's upper extremities. See Cafaro, 15 Va. App. at 661, 426 S.E.2d at 492. Although Dr. Swanson opined that Ingo is 100% disabled, he has not specified a rating for each of Ingo's upper extremities.

The principle is well established that when the commission's opinion is based upon the results of a medical diagnosis, that determination is a factual finding based on credible evidence and is binding on appeal to this Court. See Caskey v. Dan River Mills, Inc., 225 Va. 405, 411, 302 S.E.2d 507, 510-11 (1983). Based upon this record and the commission's findings, we cannot conclude as a matter of law that Ingo's evidence proved she has reached maximum medical improvement. Tomko v. Michael's Plastering Co., 210 Va. 697, 699, 173 S.E.2d 833, 835 (1970).

## II. Retention of Jurisdiction

The commission concluded its opinion with the following statement: "In view of our finding that [Ingo] has a permanent disability that has not reached maximum medical improvement, we will retain jurisdiction over this case until such time as the

-

degree if any of permanency can be determined."  The employer contends that the commission improperly retained jurisdiction over Ingo's claim.

In Brown v. United Airlines, 34 Va. App. 273, 540 S.E.2d 521 (2001), we held that when the commission denied a claim on the ground that the claimant had not yet reached maximum medical improvement and removed it from the hearing docket, that action did not constitute a dismissal of the claim.  Id. at 281, 540 S.E.2d at 525.  In this case, the commission ruled that although the medical evidence proved that Ingo established a permanent impairment, she failed to prove that she has reached maximum medical improvement.  The commission did not dismiss Ingo's claim and explicitly retained jurisdiction over her claim. Based upon our holding in Brown, we find no merit in the employer's argument that the commission erred in retaining jurisdiction over Ingo's claim.

For these reasons, we summarily affirm the commission's decision.

Affirmed.

-